## SAMUEL DANFORTH *v.* ELI L. EVANS.

If a promissory note contain evidence upon its face that it is *void*, as having been given in pursuance of an illegal contract, the court should exclude it from being given in evidence; but, if that fact is not apparent upon the note, evidence may be given to the jury, and the fact left for them to find; and, if the question be so left to the jury, and they find such facts as would render the note void for illegality, it is no ground for reversing the judgment, rendered by the court in pursuance of that finding, that the note did in fact contain enough to have justified the court in excluding it without submitting it to the jury.

If a question in reference to a written contract have been left to the jury to decide, and the jury have found as the court should have decided from an inspection of the paper, the fact that the question was so left to the jury is no ground for reversing the judgment.

Where the plaintiff, owning a horse worth $25, sold him to the defendant, and received in payment a note for $50, made payable when Martin Van Buren was re-elected President of the United States, with interest annually, and the jury found that the note had reference to a presidential election then pending, which did not result in the election of Martin Van Buren as President, and which had passed before the commencement of this action, it was held that the note was given upon a wagering contract, and was therefore void.

And, the horse having been retained by the defendant, without objection on the part of the plaintiff, until after the contingency, which was to determine who was winner, had happened, it was held that the plaintiff could not recover the value of the horse from the defendant.

If the event, which is to determine a wager, have transpired, and the money, or other thing wagered, have been paid over to the winning party, the principle of law, " *in pari delicto potior est conditio defendentis,*" applies.

Assumpsit upon a promissory note, with a count in *indebitatus assumpsit* for a horse sold and delivered and for money had and received. Plea, the general issue, and trial by jury.

On trial the plaintiff gave in evidence the note declared on, which was in these words : " Haverhill, N. H., Oct. 16, 1840. For value received I promise to pay Samuel Danforth, or order, fifty dollars on the day that Martin Van Buren is re-elected President of the United States, with interest annually." (Signed) Eli L. Evans. The execution of the note was admitted.

The plaintiff also gave evidence tending to prove that the said note was given for a horse, worth at the time from twenty to twenty five dollars, and that the plaintiff had sold said horse previous to the commencement of this action.

The defendant offered evidence of the sayings of the plaintiff previous to, and at the time of, the execution of the note, for the purpose of showing that the note was given on a *wagering contract.* To the admission of this testimony the plaintiff objected, but the court overruled the objection.

All the testimony in the case tended to prove that the horse,

when received by the defendant, was to be retained by him, and was only paid for by the note; and that the note was only to be paid by the defendant upon the happening of the contingency named in the note.

The plaintiff requested the court to charge the jury, that, if the note should be found by them to contain a wagering contract, he would be entitled to recover the value of the horse upon the second count in the declaration, if they believed the testimony, and that the *time*, within which the wager was to be considered as decided, in the meaning of the parties, must be determined from the note itself.

The court declined to charge as requested, but did charge the jury, that, if the note was given upon a wagering contract, there could be no recovery on the note, as such contracts are void; and that, if the horse was delivered upon a wagering contract, and the event for which the wager was made had transpired, and the horse, or the avails of him, was in the hands of the winner, there could be no recovery upon the count for the horse; but that, if they should find that the note was given upon a wagering contract, and that the time of payment, which was the happening of the contingency that was to determine the wager, had not yet transpired, the plaintiff might recover the value of the horse, provided they found that the defendant had sold the horse prior to the commencement of this action.

The court further instructed the jury, that the time of the payment of the note must be determined from the note, if it was therein expressed; and that, if there was more than one time, to which the description in the note would apply as the time of payment, they then might resort to other testimony, to determine to which of those times the note referred.

The jury returned a verdict for the defendant. Exceptions by plaintiff.

*E. Farr* for plaintiff.

The contract of the parties, about which questions arose on the trial below, was reduced to writing, and its nature must be gathered from that writing; and whether void or not for containing a wagering contract will not make any difference in the rules of its

Danforth *v.* Evans. .

interpretation.     There was no latent ambiguity about it.     9 Vt. 287.     We therefore think the court below erred ;—

1.    In receiving parol proof of the sayings of the plaintiff previous to the execution of the note, to show on what kind of contract it was given; for the contract shall not be taken to be completed, till reduced to writing, and previous to that no one could know what it would be ; neither could such sayings come as admissions of its nature, being given before that which is the contract had any existence.

2.    In leaving it to the jury, as a question, whether the event on which the note was to become payable, *or dead,* had happened ; for it is a public and known fact that Martin Van Buren has not yet been re-elected President, nor has anything happened that makes it impossible for him to be re-elected hereafter.    And the contingency in the note could only be decided by the happening of some such event.

3.    In directing the jury, that, if there was more than one time that would apply to the description in the note as the time of payment, they might decide which of those times was meant ; for this was deciding that the contingency of the note was to depend on the result of some particular election, which was incorrect.

There was no evidence that the parties referred to one election more than to another ; and there was no ambiguity in the note on that subject, although there was more than one time that would equally answer the description in the note.    Any future election would, when the note was given, equally answer that description.

4.    In directing the jury that they might, in one contingency, ook beyond the note to parol proof of the time when the note was to become payable, when there was no ambiguity, *latent* or *patent,* in the note.

5.    In directing the jury, that, if the horse, or the avails of him were in the hands of the winner, there could be no recovery; for the horse was sold by Evans before the election was past, and, if held by him as stakeholder, or agent, for the plaintiff, he had no authority at that time to dispose of it; or, if the horse was not sold, and was in the hands of the winner, even Evans held him, not as winner, but as stakeholder, if he ever was such,—for nothing had passed between the parties since the wager was laid.    There might

be many ways in which the wager could get into the hands of the winner, and the loser not agree to the loss; it was not understood or acknowledged to be lost, by the plaintiff; he supposed it yet undecided; hence he had not waived the illegality, and may recover. 1 Sw. Dig. 412. 5 T. R. 405. 3 Stark. Ev. 1658.

6. In instructing the jury, that, if the event had happened, and the wager was decided against the plaintiff, there could be no recovery on the count for the horse; for the doctrine, that, after a wager is lost. and paid over, it cannot be recovered back, does not apply here; and there is no pretence that it does apply, unless the horse was the stakes of the plaintiff, in the hands of the defendant as stakeholder, and lost to the plaintiff, and so understood by him, by the wager being decided against him. That this was not the case is evident; for—1. The horse was not staked; *he was sold.* 2. He was not to be returned in any event. 3. Nothing was staked against him by Evans. 4. The defendant held him as purchaser, and disposed of him as such. 5. The note embraced the stakes of both parties;—so much as was the value of the horse by the plaintiff, the balance by the defendant, all in one note. The horse, then, was sold, as appears by the exceptions, and only paid for by the note. The jury found the note void as containing a wagering contract; consequently the horse has not been paid for, and the plaintiff may recover in this action. See *Edgell v. Stamford,* 6 Vt. 555, and authorities there cited.

7. In leaving it to the jury, whether the time of payment was expressed in the note. That question should have been decided by the court as preliminary to the admissions of the parol proof offered.

*A. Underwood* for defendant.

1. The court decided correctly in admitting evidence of the sayings of the plaintiff. 3 Stark. Ev. 1018, 2 Ib. 129, 283, and cases cited. 1 Selw. N. P. 58 *et seq.*

2. The plaintiff is not entitled to recover the value of the horse upon the second count in his declaration. The defendant could not be considered a *stakeholder*, even though the event, upon which the wager depended, had not happened. It is believed that no case can be found, where one of the *parties* to a wagering contract has ever been treated as a stakeholder. The illegallity of the contract

is in the making of it.   Neither party is entitled to favor; and when the stakes are delivered to one of the parties in the beginning, not to be returned in any event *in specie*, but something else in lieu, as the wager may eventuate, it is the folly of the party complaining, that he has parted with his property.

3.   If the *time*, when the wager was to be considered as decided in the meaning of the parties, *must* be decided by the note itself, as contended by the plaintiff, the defendant insists that the case must be decided in *his favor*.   The court will judicially take notice of the following facts;—that, at the time of the execution of the contract, Martin Van Buren was President of the United States, that an *election* of President was then pending, that the then President was a candidate for re-election, that Wm. Henry Harrison was the opposing candidate, and was elected; hence we say that the court, taking notice of these facts, must decide that *that* was the election contemplated by the contract.   Again, we insist that the word *"re-election"* in the contract could *only* have reference to the election then next coming.   The election of Mr. Van-Buren at some future time could not, properly speaking, be called a *re-election*, but only a *second election*.

But, if we are incorrect in this, the court were correct in instructing the jury, that, if there was more than one time, to which the description in the note might apply as the time of payment, they might resort to other testimony to determine to which time it did refer.   3 Stark.  Ev. 1021–6.   *Roberts* v. *Button*, 14 Vt. 195. *Rich* v. *Elliott*, 10 Vt. 211.

The opinion of the Court was delivered by

HEBARD J.   The declaration contains two counts.   One count being upon a note of hand in the following words.   "For value re- "ceived I promise to pay Samuel Danforth or order fifty dollars on "the day that Martin Van Buren is re-elected President of the "United States, with interest annually.   (Signed) ELI L. EVANS."

The other count was for a horse sold, and for money had and received.   On trial the first question to be determined was in relation to the character of the note.   If the note has sufficient on its face to render it void, the court should so decide; if not, then evidence *aliunde* must be introduced; and for this purpose testimony was

Danforth *v.* Evans.

submitted to the jury, to show the nature of the contract, and the consideration for which the note was given; and if the note was bad upon its face, so as to need no extrinsic aid, still it can be no ground of complaint, that the court left it to the jury to find the same fact. This is the ordinary mode of attacking a note having nothing suspicious on its face.

The plaintiff also complains that the jury were left to find the time when the note was to become due, by testimony aside from the note. Perhaps the court, out of abundant caution, submitted that to the jury, which they should have decided from the paper itself. But if that is so, and the jury have found the same fact from the note and other testimony, that the court should have found from the note alone, then that direction has not induced a wrong verdict, and is no ground for reversing the judgment. The jury, from the instructions given them by the court, must have found that the time of payment, as set forth in the note, was the election then pending, and that the time of payment had passed before the commencement of this suit. And we are all well satisfied that that finding was warranted from the note itself, when taken in connexion with such facts as courts may take judicial notice of. We do not hesitate to regard the note, after the finding of the jury, as having been given upon a wagering contract, and void. It possesses all the elements that are necessary to constitute any wager. In communities where betting is prohibited by law, men have always resorted to some expedient to evade the law. But a wager, though called by any other name, is none the less immoral, and opposed to law; it is a wager still. This note was given for a horse, but the horse was worth but half the amount of the note; the defendant took the horse in exchange for the note, and whether he was to be liable to pay the note depended upon the result of a pending election. This disposes of the note and the first count in the declaration.

The next inquiry is, whether the jury were correctly instructed in relation to the plaintiff's right to recover under his second count. And upon this part of the case we are satisfied with the charge. At the time of this transaction, the parties may be regarded as their own stakeholders, the horse as the *stake* upon one side in the hands of the defendant, and the note, upon the other side, as the *stake* in the hands of the plaintiff, and thus, by this arrangement, the *stakes*

may be considered as paid over to the winning party, immediately upon the happening of the contingency upon which the bet depended. This wager, therefore, was determined, and the horse paid to the defendant, the winner, before notice was given to the defendant. While the event was *uncertain* and *undecided*, the plaintiff might have called for the return of his horse. The law gives both parties a *"locus penitentiae"* and if that is improved, it will favor the party that repents of his error. But if the event has transpired, and the money, or other thing, has been paid over to the winning party, the principle of law, *"in pari delicto potior est conditio defendentis,"* applies. *Mc Collum* v. *Gourley*, 8 Johns. 147. 2 Com. on Cont. 125. 8 T.R. 575. *Vischer v. Yates*, 11 Johns. 23. *Yates v. Foot*, 12 Johns. 1. When the event has transpired, and the money is lost, it is not for the immorality of the act that the loser repents, but it is that he has lost his money. In that case the law withholds its aid from either party. It equally withholds its aid from the winning party to recover the bet from the loser, and from the losing party to recover back the money, after it has been won and paid over.

To apply these principles to the present case,—we find that the parties made the bet, the horse was delivered over to the defendant, and by him retained without objection till after the contingency, that was to determine who was the winner, had happened, and then, having lost his bet, he brings this action to collect the value of the horse which he had lost by entering into a transaction that was against morality and against law.

We are satisfied with the judgment as it is, and should be slow in reversing the proceedings of the county court, when the only error committed was in ruling the points made by the plaintiff more favorably for him than he could legally claim.

Judgment affirmed.