## TOWN OF BARNET *v.* TOWN OF NORTON.

### October Term, 1916.

Present: MUNSON, C. J., WATSON, HASELTON, POWERS and TAYLOR, JJ.

Opinion filed November 10, 1916.

*Paupers—Residence—P. S. 3664—"Family"—Evidence—Notice Under P. S. 3668—Liability to Support Wife's Mother —Application for Support—Directed Verdict—Cross Examination—Presumption of Receipt of Letter—Harmless Error—Successive Notices—Exception not Briefed.*

Where a woman gained a residence, under P. S. 3664, in the town of Norton, while living with her husband, and after her husband's death lived in the towns of Lyndon and Burke, though not long enough in either town to gain a residence therein, and in the town of Barnet for more than three years, but was not self-supporting during this period, *held*, if she became a pauper in Barnet, so that assistance was rendered to her by the overseer of the poor, under the law, she gained no residence there.

A pauper woman, living with her son-in-law and daughter, is not a member of the family of the son-in-law, in the sense of the pauper law.

In an action brought by one town against another to recover expenses incurred in the relief of a pauper, the overseer of the poor of the plaintiff town testified that he had mailed a notice to the overseer of the defendant town, and produced a typewritten form of notice, which he testified had been filled in by him so as to be just like the one sent the defendant's overseer, from memory, three or four days before he testified; *held*, as there was evidence tending to show that the paper offered was like the paper in question, it was admissible, and the question whether this evidence was true was for the jury; and the fact that an interval of time had elapsed since the witness made the original notice, and before he made the writing offered, went to the weight, and not to the admissibility of the evidence.

In such case, the writing itself had no evidential value, and was inadmissible apart from the testimony of the witness, but was equivalent to the witnesses' oral statement of the same tenor.

It is not essential that a notice, sent by the overseer of the poor of one town to the overseer of another, under P. S. 3668, should be dated, because it is immaterial when such notice is prepared or sent; it is the time when it is received by the overseer of the town chargeable that is important, and if that time is within thirty days of the application for relief, it is all the statute requires.

One is under no legal obligation to support his wife's mother.

Assuming that an application to the overseer of the poor for the support of a pauper is necessary, it is wholly unimportant by whom it is made.

Where a trial court directs a verdict, without submitting any issue to the jury, a court of review will not consider the rulings admitting evidence, providing there is competent evidence sufficient to warrant such direction.

Where a witness has twice answered the same question on cross examination, as to an immaterial matter, it is not error for the court to restrict the cross examination in this regard.

A notice sent by the overseer of one town to the overseer of the other, under P. S. 3668, is not vitiated by describing the pauper as "transiently being" in the town where relief was furnished her.

Where such notice was directed to "the Overseer of the Poor of the Town of Norton", and the envelope bore the sender's return card and was not sent back, there was a presumption of its receipt by the official to whom it was addressed.

The testimony of a witness that he "mailed" the notice in question, implies that the envelope bore the required postage, and was deposited in the post office.

An exception to the admission of a notice objected to for insufficiency, and erroneously admitted as a "communication" from the overseer of the poor of the plaintiff town to the overseer of the defendant town, will not be sustained, where the plaintiff disclaimed any benefit from it as a basis of recovery, and a verdict is ordered by the court for the plaintiff.

The introduction in evidence of one notice, does not exhaust the right of the plaintiff town, if it has given others, which may be put in evidence, and may be relied upon by the plaintiff so far as the exigencies of the case require.

An exception to the admission of certain bills and orders showing the amount expended by the plaintiff town for the relief of the pauper in question, on the ground that the notices given by two

35

successive overseers of the plaintiff town to the town sought to
be charged are invalid, is unavailing where it appears that the
notice given by the first overseer is valid, and that no notice
was given by the second overseer.

An exception to the judgment rendered in the court below will not be
considered in Supreme Court, where the excepting party does not
allude to it in his brief, and makes no claim that the recovery
was larger than the record warrants.

ASSUMPSIT to recover for the support and relief of a pauper
alleged to be chargeable to the defendant.    Trial by jury at the
December Term, 1915, Caledonia County, *Stanton,* J., presiding.
Verdict ordered for the plaintiff; judgment on the verdict.    De-
fendant excepted.    The opinion states the case.

*C. R. Powell* and *Simonds, Searles & Graves* for defendant.

*Dunnett & Shields* for plaintiff.

POWERS, J.    This action is brought to recover expenses in-
curred in the relief of Mrs. Morency Lavely, a pauper.    At the
close of the plaintiff's evidence, the defendant rested and moved
for a directed verdict.    This motion was overruled and the de-
fendant excepted.    Thereupon, the defendant not having asked
leave to withdraw its rest or to be allowed to introduce evidence,
the court directed a verdict for the plaintiff, to which the de-
fendant excepted.    Judgment was rendered on this verdict, and
to this the defendant excepted.    There was evidence below, ad-
mitted without objection, showing that Mrs. Lavely acquired a
residence under P. S. 3664, while living in Norton with her
husband, who died in 1908.    The defendant has not, either there
or here, asserted the contrary.    The record shows that she has not
acquired a new residence since her husband's death.    She has
lived in Lyndon and in Burke during this time; but she was not
in either town long enough to gain a residence; and, though
she lived in Barnet more than three years, she was not self-sup-
porting during this time, for the overseer of Barnet began to
aid in her support soon after she moved there, and continued to
assist her from time to time until her death.    So if she became
a pauper in Barnet, so that this assistance was rendered under
the law, she gained no residence there.

While Mrs. Lavely lived in Barnet, she made her home with one or the other of her married daughters, Mrs. Blais and Mrs. Hilliard. She spent most of her time at Hilliard's and was there when assisted by the town. Both Blais and Hilliard were laboring men, and so far as their immediate families were concerned, were self-supporting. Neither Mrs. Blais nor Mrs. Hilliard had any property or income. The time came when Hilliard decided that he could not support Mrs. Lavely any longer, and he and his wife so notified the overseer and asked for relief,—which was furnished as hereinbefore stated. The defendant argues that Mrs. Lavely was a member of Hilliard's family, and that the assistance was in contemplation of law furnished him; and so, it says, the case turns upon his financial circumstances, and not upon Mrs. Lavely's. In support of this claim the defendant presents various and comprehensive definitions of the word ''family'' taken from the dictionaries and decided cases. But so far as here involved the term presents a statutory and not a dictionary question. Mrs. Lavely was the pauper aided and was not in the sense of the pauper law a member of Hilliard's family. She was, of course, a member of his household and in a certain and proper sense a member of his family. But he was under no legal obligation to support her, and could at any moment lawfully sever relations with her. This is just what he did do, in effect, when (to use a common expression) he ''threw her onto the town.'' This is sufficiently shown by *Brookfield* v. *Warren,* 128 Mass. 287, wherein it is held that a man is under no legal obligation to support his stepchild, and the fact that such child receives aid from a town as a pauper, upon the stepfather's application, does not make the latter a pauper. Nor does the fact that Hilliard or his wife made the application change the situation. Assuming that an ''application'' is required in such cases, it is wholly unimportant who actually makes it. See *Waitsfield* v. *Craftsbury,* 87 Vt. 406, 89 Atl. 466, Ann. Cas. 1916 C, 387.

So far, then as the questions of residence and financial conditions are concerned, the plaintiff made out a case below, and upon unobjectionable evidence. And in the circumstances all exceptions based upon the alleged immateriality of evidence admitted on these questions, together with the alleged disregard of the best evidence rule, are of no consequence whatever. The essential facts were established by legitimate evidence. If these

or other unnecessary facts were supported by immaterial evidence, the error was obviously harmless, for without it, it would have been the duty of the court to direct a verdict for the plaintiff,—assuming of course that the expenditures and notice were proved. The rule we are applying is thus stated: When a trial court directs a verdict without submitting any issue to the jury, a court of review will not consider the rulings admitting evidence, provided there is competent evidence sufficient to warrant such direction. *Simons* v. *Fagan,* 62 Neb. 287, 87 N. W. 21; *Johnston* v. *Branch Banking Co.,* (Tex. Civ. App.) 143 S. W. 193. See, also, *Danforth* v. *Evans,* 16 Vt. 538; *Castleton* v. *Langdon,* 19 Vt. 210.

The defendant excepted to the action of the court in restricting the cross-examination of Mrs. Blais; but no error was committed for the witness had twice answered the cross-examiner's question, and besides it related to Mr. Blais' financial condition which was not in the remotest way involved in the case.

Martin Turner testified that he was overseer of the poor of the town of Barnet from 1909 to 1913. That he was called upon for assistance by Mrs. Lavely in the fall of 1912. That he investigated the matter, and within five days of the call he mailed a notice to the overseer of the defendant town. That he had previously obtained from another overseer a form to be used in such cases. And that a typewritten form of notice, marked as an exhibit, had been filled in by him so as to be just like the one sent to the defendant's overseer. That he did this three or four days before he testified, and did it from memory. The exhibit was then admitted, and the defendant excepted.

It was not objected below that no foundation had been laid for the admission of secondary evidence of the contents of the notice, and it is here admitted that the witness could have testified from recollection as to what it contained. But it is insisted that the witness could not be allowed to reproduce the notice so long after it was made. It is apparent that this writing was in no sense a "memorandum" as that term is used in the law of evidence. It was not a copy in the usual sense of that term, which ordinarily involves transcribing an original. But in another sense it was a copy, for any writing shown to be like another may be spoken of as a copy. If there is evidence tending to show that the paper offered is like the paper in question it is admissible and the question whether this evidence is

true is for the jury. The fact that an interval of time had elapsed since the witness made the original notice and before he made the writing offered goes to the weight of the evidence and not to its admissibility. 2 Wig. §1280. The writing in and of itself had no evidentiary value. Apart from the testimony of the witness, it was inadmissible. It was, however, the equivalent of his oral statement of the same tenor. Indeed, the admission of the writing was one way of presenting the testimony of the witness. Id. §1277. The course adopted was somewhat unusual, but allowable. Thus in *Shove* v. *Wiley,* 18 Pick. (Mass.) 558, a bank clerk was shown a printed form of notice in common use and testified that he believed that the notices in question were in the same form, and it was held that this was competent and sufficient evidence of the fact. Again in *Brigham* v. *Coburn,* 10 Gray (Mass.) 329, a clerk testified that he drew a certain assignment and kept no copy of it; but that the blank produced by him was the same as those used in the office and that he had filled it up from minutes on his docket and believed it to be a correct copy of the assignment; and it was held that this evidence was competent and sufficient.

Here, again, we are unembarrassed by any possibility that improper use may have been made of the copy, because the jury was not given an opportunity to misuse it.

It was also objected that this notice was not dated. But this was not essential. It is immaterial when such a notice is prepared or sent; it is the time when it is received by the overseer of the town chargeable that is important. If that time is within thirty days of the application for relief, it is all the statute requires.

It was further objected below that this notice referred to Mrs. Lavely as "transiently being" in Barnet, and it is argued that inasmuch as the record shows that she came there to reside, this statement is false and vitiates the notice. This position is untenable. The use of the word "transiently" was wholly unnecessary. It was not required of the plaintiff's overseer that he should say anything in his notice about how Mrs. Lavely came to be in Barnet or how she was living there. So if this statement is inaccurate, it did no harm and was immaterial. And this is not to be taken as implying that the statement is inaccurate, for it may be that under the present law it is proper to speak of one who has not gained a residence in a town as a

transient person in that town. This was the sense in which the term was used in the notice, as is apparent from the context.

Some question is made as to the sufficiency of the address on the envelope in which this notice was sent, but we think it was sufficient to raise a presumption of its receipt in due course. It was directed to the Overseer of the Poor of the Town of Norton. Under rules formerly obtaining, there might be some question about the sufficiency of such an address. But recent holdings are more liberal. Modern mail service has attained that degree of efficiency and certainty that such an address is almost if not quite as sure to reach its proper destination as if addressed with an individual's name. Public officers like town clerks, constables, overseers and listers are commonly addressed in this way, and it is rarely, if ever, that such an address miscarries. The presumption of receipt may be weakened by such an address, but it is raised. Here the presumption is strengthened by the fact that the envelope bore the sender's return card and never came back. Nor was it necessary to show in express terms that this envelope bore the required postage, nor that it was deposited in the post office. The witness testified that he "mailed" it, and this implies all that. *Omaha* v. *Yancey,* 91 Neb. 261, 135 N. W. 1044; *Johnson* v. *New York, N. H. & H. R. R.*, 11 Me. 263, 88 Atl. 988; *Oregon Steamship Co.* v. *Otis,* 100 N. Y. 446, 3 N. E. 485, 53 Am. Rep. 221. See also *Whitney Wagon Works* v. *Moore,* 61 Vt. 230, 17 Atl. 1007.

Geo. F. Winch was overseer of Barnet from March, 1913, to the time of trial. He testified that he aided Mrs. Lavely and that he sent a notice to the defendant town. When this notice was offered in evidence it was objected to for insufficiency. It was then offered as a "communication" from the plaintiff's overseer to the defendant's overseer. It was admitted as such and the defendant excepted. It thus appears that this writing was not admitted as a notice, and the transcript shows that the plaintiff expressly stated that it claimed nothing for it as a basis of recovery.

The admission of this writing was error. We agree with counsel for the defendant that communications between persons who become litigants are not evidence unless they have some legal significance,—unless they tend to prove something material to the issues. The fact that something in the nature of diplomatic correspondence passed between these parties was wholly

immaterial; but inasmuch as the plaintiff disclaimed any benefit from it as a basis of recovery, no harm resulted in view of the disposition of the case. Therefore this exception is not sustained.

Afterwards and on June 9, 1914, Winch mailed the defendant's overseer another notice, a copy of which was admitted subject to the defendant's exception. It was not claimed below, nor is it claimed here that this notice was deficient either in form or substance. The only objection made to its admissibility was that the plaintiff had already introduced a notice and elected to a stand on it and was bound by it.

The exception is without merit. It seems to have been conceded at the trial that under the statute as it now stands successive notices are required at thirty day intervals; but however this may be, the introduction of one notice does not exhaust a plaintiff's right if it has given others. The others may be put in evidence and the plaintiff may rely upon them so far as the exigencies of his case require.

The defendant excepted to the admission of certain bills and orders showing the amount expended by the town of Barnet in Mrs. Lavely's relief. But the only objection made below was that the Turner notice and the first Winch notice were invalid. As we have already seen the Turner notice was valid and there was no first Winch notice. So the exception is unavailing.

As stated above, the defendant excepted to the judgment, but it does not allude to this exception in the brief and makes no claim that the recovery was larger than the record warrants, so we give no attention to that question.

*Judgment affirmed.*