293 So.2d 500 (1974)
Lonnie A. MOORE, III
v.
DREXEL HOMES, INC.
No. 6130.
Court of Appeal of Louisiana, Fourth Circuit.
April 9, 1974.
Rehearing Denied May 10, 1974.
Writ Refused June 21, 1974.
*501 Dufour, Levy, Marx, Lucas & Osborne, Michael Osborne, New Orleans, for plaintiff-appellant.
Charles W. Fasterling, New Orleans, for defendant-appellee.
Before GULOTTA, STOULIG and SCHOTT, JJ.
SCHOTT, Judge.
On February 1, 1970, plaintiff Moore, as lessee, and defendant Drexel, as lessor, entered into a lease contract on a residential apartment for a term of twelve months. The contract provided that lessee had deposited $100 with lessor to secure the faithful performance of lessee's obligations and for a return of such deposit by lessor at termination of the lease subject to deductions for repair of damages beyond normal wear and tear. The contract further provided as follows:
"If Lessee, or Lessor, desires that this lease terminate at the expiration of its term he must give to the other written notice at least 30 days prior to that date. Failure of either party to give this required notice will automatically renew this lease and all of the terms thereof. This provision is a continuing one and will apply at the expiration of the original term and at the expiration of each subsequent term."
Moore placed in evidence a copy of a letter dated December 26, 1970, in which he stated:
"... I am submitting this notice of request that said lease not be renewed for another full year on its date of expiration.
"I anticipate moving into a new home on or before June 1, 1971 and would like to continue to rent this apartment on a month to month basis until such time. I will submit notice, in advance, of the exact date on which I expect to vacate these premises ..."
Moore testified that he personally mailed the original of this letter to Drexel and enclosed his rent check for January, 1971, which was deposited in Drexel's account. *502 Although Moore received no reply from Drexel he assumed from the fact that it received his check that it had likewise received his letter and was agreeable to rent the apartment to him on a month to month basis.
On June 22, 1972, Moore mailed to Drexel written notice of his intention to vacate the apartment and enclosed his rent check for the following month, which was subsequently deposited in Drexel's account. He terminated occupancy on July 31, 1972, and subsequently made repeated written demands on Drexel, seeking return of his deposit. Drexel did not reply to the demands or provide an itemized statement accounting for the retention of the deposit. After Moore vacated the apartment, Drexel leased it to another tenant commencing September 1, 1972.
Moore sued for a return of his deposit together with penalties and attorney's fees pursuant to LSA-R.S. 9:3251 et seq. and Drexel reconvened for the August rent of $135 subject to a credit for Moore's deposit. From a judgment in Drexel's favor on the main and reconventional demands, Moore has appealed.
The principal issue is whether Moore fulfilled his obligation of giving notice under the lease so as to avoid its automatic renewal. If he did, the lease expired on January 31, 1971, his tenancy was then on a month to month basis until July 31, 1972, and he would prevail in the case. If he did not, the lease was still viable and binding when he vacated and the trial judge's decision may be correct.
The following is found at 50 Am.Jur.2d, Landlord and Tenant, § 1184:
"Generally, whether a mailed notice of the exercise of an option to renew or extend a lease will be regarded as sufficient depends upon the terms of the lease and upon the surrounding circumstances. Usually it is held that where the lease is silent as to the means of communicating the notice of election to the lessor, or where it merely provides that written notice shall be given, such notice may properly be transmitted by mail within the specified time, although there is authority indicating that the lessee assumes the risk of a failure of the means of communication adopted, and that the presumption of delivery of a letter shown to have been placed in the mails is rebuttable. Thus, notice by mail has been held sufficient to satisfy the requirement of notice in writing, but generally a letter must be received by the lessor in order to constitute it effective notice."
While the lease in question does not specify the use of the mail as an acceptable means of giving written notice, it does not preclude it as such. Moore testified that he always paid his rent by mail and Drexel always received it on time. Under these circumstances we hold that proper mailing of the December 26, 1970, letter would constitute the giving of written notice pursuant to the lease but that such notice would not be adequate unless it was received by Drexel.
Moore testified that he personally mailed the letter in an envelope which he properly addressed to Drexel and which contained his return address and that his letter was not returned to him. He relies on New Orleans Silversmiths, Inc. v. Wormser, 258 So.2d 592 (La.App. 4th Cir. 1972), to invoke the presumption of due receipt by an addressee of a letter properly addressed, stamped and mailed. But Drexel contends that his proof falls short because he did not testify that postage was prepaid.
In McWilliams v. Reith, 149 La. 298, 88 So. 913, our Supreme Court held:
"The lady clerk in defendant's office testifies to the letter having been mailed, properly addressed; but, as she says nothing of the postage having been prepaid, no presumption arises of the letter having been received. 22 C.J. 99; 22 A. & E. Eng. of L. 1255. Moreover plaintiff testifies that he opens his mail *503 himself, and that the letter was not received."
While on initial examination this would seem to be dispositive of the issue, the Supreme Court appears to have been influenced by the fact that the addressee testified that he opened his mail himself and that the letter in question was not received which, as will be seen hereafter, is in sharp contrast to the evidence introduced by Drexel in the instant case. Furthermore in the cited case we do not have the benefit of the verbatim testimony of the plaintiff, but in the instant case we have the following testimony from Moore:
"Q. Did you, personally, mail that letter?
A. Yes, sir, I did.
Q. Did your envelope contain a return address?
A. Yes, sir, it did.
Q. Was the original of that letter ever returned?
A. I beg your pardon.
Q. Was the original of that letter ever returned to you as the
A. No, sir, it was not.
Q. Was there an enclosure with that letter, Mr. Moore?
A. Enclosed with that letter was the rent check for the month of January, 1971."
At no time did Moore testify that he placed a stamp on the letter in his direct examination, nor was he asked about this on cross examination. But it seems only reasonable that when one states that he mailed a letter to another he necessarily implies that it was properly mailed with prepaid postage. While there is a conflict among the authorities as to whether testimony such as Moore's is sufficient to state that all of the acts incidental to mailing, including prepayment of postage, were performed, I Merrill on Notice § 643, 30 Am. Jur.2d Evidence § 1116, the weight of authority from other jurisdictions seems to support the view that such testimony is sufficient. See City of Omaha v. Yancey, 91 Neb. 261, 135 N.W. 1044; Dawson Farmers' Elevator Co. v. Opp, 57 N.D. 598, 223 N.W. 350; Town of Barnet v. Town of Norton, 90 Vt. 544, 99 A. 238.
Having concluded that Moore's testimony was sufficient to raise the presumption that Drexel received the notice we must weigh Drexel's evidence to rebut that presumption.
John Cole, Drexel's President, testified as follows:
"Q. Did you receive Mr. Moore's letter of December 26, 1970?
A. No, I don't have any letteryou mean this letter I have right here, this request for
Q. Yes, did you receive that?
A. No, not to my knowledge, never seen it before.
Q. Never saw it before?
A. No, not to my recollection."
He testified further that sometimes he opened the mail and sometimes his secretary, Mrs. Curren, did. She testified that she received and opened all of Drexel's mail and gave the following testimony:
"Q. I want to show you exhibit P-4, which preports to be a letter of Mr. Moore dated December 26th, 1970, to Drexel Homes Inc. and ask whether or not you have ever seen that letter?
A. No, sir, if this letter had been sent to the office it would have been in the file with the lease.
Q. It would have been with the file?
*504 A. Yes.
Q. It was not?
A. No, it was not."
But she went on to say that the only thing in the file was the lease notwithstanding the fact that Cole and another representative of Drexel admitted receiving other pieces of correspondence from Moore beginning with his letter of June, 1972. Since she based her denial of the receipt of the December, 1970, letter on its absence from her file and since Drexel's receipt of other correspondence was established despite its absence from the same file her testimony on the point was hardly conclusive or even persuasive.
In the final analysis Drexel's attempt to rebut the presumption that it received Moore's notice to prevent the lease from being automatically renewed has about the same effect as that which was offered to rebut the presumption in New Orleans Silversmiths, Inc. v. Wormser, supra, in which this Court found that the presumption had not been rebutted. Consistent with that case, we hold that Drexel did not rebut the presumption of receipt of Moore's notice and that he effectively cancelled the lease as of January 31, 1971.
Drexel contends that this is simply a matter of assessing the credibility of the witnesses who testified at the trial and that our reversal of his judgment would do violence to the rule that he was in the best position to make a credibility call. But this is an over simplification of the case for a number of reasons. In the first place, the case was tried piecemeal on March 28 and April 24, 1973, and was not decided until September 4, 1973. The case was originally submitted after the first trial date on the testimony of Moore, Cole, and a third witness, but on motion for reopening of the trial the Court heard Mrs. Curren's testimony at the second trial date. Aside from the fact that there was a four month lapse between the time that the judge heard the first testimony and decided the case, which would place anyone at a disadvantage in carefully weighing the testimony, there is a colloquy between the Court and counsel at the beginning of the second day of trial, indicating that the trial judge decided the case wholly on the basis of the fact that Moore and Cole had struck a new oral lease renewing the old one on a year to year basis before the expiration of the first year. But this is based upon testimony concerning a conversation which took place between Moore and Cole prior to the date he mailed his letter of December 26, and such conversation would have no effect on his positive notice pursuant to the lease that it was to be terminated in accordance with its terms.
There being no assigned reasons, we do not know the basis on which the case was decided, but our conclusion is that if the trial judge decided the case on the basis of the oral conversation there was legal error in doing so, and if he decided on the basis of the testimony that Moore's letter was not received there was likewise legal error in the failure of the trial court to apply the law relative to the presumption of due receipt of Moore's letter as discussed herein.
We distinguish this case from Sawyer v. Central Louisiana Electric Co., 136 So.2d 153 (La.App. 3rd Cir. 1961), in which the addressees testified without equivocation that they had not received the letter and successfully rebutted the presumption, since in the instant case the testimony of Cole and Mrs. Curren was not unequivocal and was more in the nature of that which was found to be insufficient in New Orleans Silversmiths, Inc. v. Wormser, supra.
Drexel is a large landlord renting and managing 112 residential apartments. It required its tenants to sign a form lease and is in a position to include in that lease any language which it might deem necessary to protect itself from the vagaries of the postal service. It can require its tenants to deliver written notices to its office by hand, it can require the use of registered *505 or certified mail, or it can conceive of some other method of insuring that it actually receives such notices. While it might be argued that Moore took his chances on the use of the mail when the relative positions of Moore and Drexel are considered in this case it is far more just and equitable to place the risk on Drexel rather than its tenants.
Having concluded that the lease expired on January 31, 1971, the only question remaining is the applicability of LSA-R.S. 9:3251 et seq. Those statutes which comprise Act 696 of 1972 provide that on demand from a tenant for the return of his deposit the landlord must either return it or, if used to offset the tenant's default or damage to the premises, provide the tenant with an itemized statement accounting for the proceeds. Drexel did neither and is therefore liable for damages for its willful failure to comply with R.S. 9:3251 as defined in R.S. 9:3252. Plaintiff prayed for the $200 liquidated damages and is entitled to such, having proved no actual damages.
As to attorney's fees, R.S. 9:3253 provides that the Court may in its discretion award such to the prevailing party. Moore made repeated demands on Drexel for his deposit or an accounting and was ignored. He was left with no recourse but to obtain counsel and file suit. The circumstances make it appropriate to award an attorney's fee of $300 which is commensurate with the amount involved in this case.
Accordingly, the judgment appealed from is reversed and set aside and there is judgment in favor of plaintiff, Lonnie A. Moore, III, and against Drexel Homes, Inc. in the sum of $600 with legal interest from date of judicial demand until paid, and for all costs of these proceedings including the costs of this appeal, and there is judgment in favor of Lonnie A. Moore, III, as defendant in reconvention, dismissing the reconventional demand of Drexel Homes, Inc.
Reversed and rendered.