CURRAULT, Judge.
This appeal arises from a judgment rendered against defendant-lessee, Thurman W. Ganus, in an action by plaintiff-lessor, Robert A. Ottermann, for possession of property pursuant to the terms of a lease agreement.
In September, 1967, Robert A. Otter-mann, lessor, leased to Thurman W. Ganus, lessee, certain commercial property briefly described as Lots 12 and 13, Square 1, Section “C” of Pontchartrain Gardens Subdivision. This property forms the corner of Veterans Memorial Boulevard and Lime Street in Jefferson Parish. As set forth in that lease, the primary term of the lease was for a period of fifteen (15) years and three (3) months, commencing October 1, 1967 and ending December 31, 1982, with an option to renew and extend the lease for ten years.
Subsequently, by written lease dated December 5, 1967, lessee, Thurman W. Ganus, subleased to PFC of New Orleans Inc. the above described property for a term commencing October 1, 1967, and ending December 31, 1982. The option to renew was retained by Thurman W. Ganus.
On January 14, 1975, Plantation Fried Chicken Corporation (formerly PFC of New Orleans, Inc.) transferred by assignment to A. Copeland Enterprises, Inc. all of its right, title and interest in and to the sublease from Thurman W. Ganus relating to the above described property.
That same date, Thurman W. Ganus subleased to A. Copeland Enterprises, Inc. the above described property for a term of ten years commencing January 1, 1983, and ending December 31, 1992 (the period of time covered by the above referred to option). Also on that date, at the request of the attorney representing A. Copeland Enterprises, Inc., Thurman W. Ganus signed a letter addressed to Mr. Robert A. Otter-mann exercising the ten year option referred to above. The original of that letter was retained by the attorney representing A. Copeland Enterprises, Inc. in connection with the matter.
On February 17, 1975, the option letter was mailed to Mr. Robert A. Ottermann, properly addressed, postage prepaid, certified mail, from the offices of the attorney *728 representing A. Copeland Enterprises, Inc. In due course, the return receipt was received back at the offices of the attorney representing A. Copeland Enterprises, Inc. The return receipt, however, was returned unsigned.[1]
At the end of the primary lease term, by letter dated January 1, 1983, Robert A. Ottermann advised Thurman W. Ganus to vacate the subject premises, alleging that the lease had expired by its own terms December 31, 1982, the ten year option having not been exercised.
Subsequently, Robert A. Ottermann filed a rule for possession of premises alleging that the lease had expired by its own terms on December 31, 1982, and that the ten year option was not exercised in accordance with the terms of this lease. Defendant, Thurman W. Ganus, answered the rule for possession and specifically pleaded as an affirmative defense that the ten year option in question had indeed been exercised on February 19, 1975.
The matter was tried on February 25, 1983. At that time, plaintiffs wife was substituted as party plaintiff due to Mr. Ottermann’s death a few days prior to trial. Following the trial, the court rendered judgment in favor of petitioner and against defendant, ordering eviction of the defendant from the leased premises. From that judgment appellant herein, Thurman W. Ganus, has perfected this appeal.
SPECIFICATIONS OF ERRORS
I.
The trial court erred in holding that the mailing of the letter exercising the option in question did not constitute written notification.
II.
The trial court erred in failing to apply the presumption that a letter properly addressed, posted and mailed was received by the addressee.
III.
The trial court erred in holding that the plaintiff rebutted the presumption of receipt of the letter by positive, direct evidence.
The issue in this case is whether the option was exercised under the contract terms by mailing a letter of intent to plaintiff properly addressed and stamped, with a return receipt returned unsigned by the intended recipient. Appellant concedes that the mailing in and of itself is not sufficient notice, but that the letter must be received by the lessor. Appellant, however, argues that there is presumption of receipt under the jurisprudence where the letter was properly addressed, stamped and mailed, and that the presumption is rebut-table only by direct evidence to the contrary.
Appellee argues to the contrary that there is no legal presumption of receipt arising upon the proper addressing, stamping and mailing of a letter under a contract; but, alternatively, if one exists, it was rebutted by the evidence.
The option clause reads as follows:
“As a further consideration for this lease, Lessor hereby grants Lessee an option to extend the period of this lease for a period of ten (10) years from the expiration of the term of the original lease, said extended term to be on the same terms and conditions and at the same rental as set forth herein. In the event Lessee desires to exercise this option to extend the lease for a period of an additional ten (10) years, Lessee shall notify Lessor in writing at least one hundred twenty (120) days prior to the expiration of this lease.”
Appellee has neither cited, nor have we found jurisprudence precluding use of the *729 U.S. Postal System as a method of delivery where the contract is silent in that regard. The trial court relied on the case of Bankston v. Estate of Bankston, 401 So.2d 436 (La.App. 1st Cir.1981) to determine mailing did not constitute written notification. That case, however, involved contract terms which specifically established the sufficiency of notice by ordinary mail. Our review of the trial court’s reasons indicate that the court may have intended its remarks to reflect that mailing alone without further proof of receipt was insufficient under this contract. This proposition is conceded by appellant. It is the question of proof of receipt that is more to the point in the case herein.
Appellant, however, points to Moore v. Drexel Homes, Inc., 293 So.2d 500 (La.App. 4th Cir.1974) as dispositive of the question. There the issue was notice of intent not to renew a lease. The court held a lease silent as to mailing does not preclude it as an acceptable means of giving written notice as long as the letter was received. The court recognized that a presumption of receipt by proper mailing exists in law and stated:
“Moore testified that he personally mailed the letter in an envelope which he properly addressed to Drexel and which contained his return address and that his letter was not returned to him. He relies on New Orleans Silversmith, Inc. v. Wormser, 258 So.2d 592 (La.App. 4th Cir.1972), to invoke the presumption of due receipt by an addressee of a letter properly addressed, stamped and mailed.” At page 502.
Relying on McWilliams v. Reith, 149 La. 298, 88 So. 913 (1921), the court noted that the proper elements of mailing were, however, necessary to invoke the presumption. In McWilliams, the suit was for commissions and fees under a brokerage contract for the sale of property, and the question of notice related to a revocation of the contract.
The New Orleans Silversmiths’ case is in accord. Further, in 50 Am. Jur.2d, Landlord and Tenant, § 1184, the following statement was cited in Moore:
“Generally, whether a mailed notice of the exercise of an option to renew or extend a lease will be regarded as sufficient depends upon the terms of the lease and upon the surrounding circumstances. Usually it is held that where the lease is silent as to the means of communicating the notice of election to the lessor, or where it merely provides that written notice shall be given, such notice may properly be transmitted by mail within the specified time, although there is authority indicating that the lessee assumes the risk of a failure of the means of communication adopted, and that the presumption of delivery of a letter shown to have been placed in the mails is rebut-table. Thus, notice by mail has been held sufficient to satisfy the requirement of notice in writing, but generally a letter must be received by the lessor in order to constitute it effective notice.”
Our research has not uncovered any recent legal impediment to application of this principle, thus the remaining question is whether appellee produced sufficient evidence to rebut the presumption.
Appellant’s third assignment of error alleges that the rebuttable evidence must be direct and positive. The cases cited for this proposition, Skipper v. Federal Insurance Company, 238 La. 779, 116 So.2d 520 (1959) and Gulf Coast Inv. Corp. v. Secretary of Housing, 509 F.Supp. 1321 (E.D.La.1980) are inapposite, since they arose under statutes providing for cancellation of insurance policies. Nonetheless, the jurisprudence is clear that the evidence must be sufficient to rebut the presumption. On the other hand, appellee argues that, even granting the presumption, appellant assumes the risk of failure of the means of communication adopted.
The evidence reveals that the letter of intent to renew the lease was properly addressed, stamped and mailed. Further, appellant chose to send the document certified, return receipt. Appellant’s attorney in the matter testified the green receipt *730 card was returned, but was unsigned contrary to instructions. He testified to some concern regarding that fact, but assumed that the letter was delivered and took no further action to determine whether or not it had, in fact, been received. It is the lack of the signature on the return receipt that appellee claims is the failure of the means of communication for which appellant assumes the risk. We agree.
Furthermore, in regard to the other evidence, appellee’s wife testified that the letter was never received by her or her deceased husband, even though she admitted that she did not open the deceased’s mail regularly. She further asserted that the letter was not in the file[2] kept on the property in question. While the file did not include schedule of rents received, current insurance policies, deposits referencing utilities, list of expenses or the building plans and specifications, and was somewhat sparce in documentation, Mrs. Ottermann testified that this file contained any and all of the records kept on the property. On the other hand, appellee further admitted that throughout the years of the primary lease, appellant or its sublessee customarily mailed rental checks to Mr. Ottermann, and that those mailed items were always received without question.
It is well established in Louisiana, however, that factual determinations of the trial court are subject to review under the manifest error doctrine in Louisiana.
“ ‘Manifestly erroneous,’ in its simplest terms means ‘clearly wrong.’ ” Arcen-eaux v. Domingue, 365 So.2d 1330, 1333 (La.1978)
After reviewing the evidence, the trial judge determined that appellee did not receive the notice of intent to renew the option. Since the trial judge is in the best position to evaluate the testimony and credibility of the witnesses, we cannot hold that his findings were clearly wrong under these facts. Therefore, for the foregoing reasons and after a review of the law and the evidence, the trial court judgment is hereby affirmed, with appellant to pay all costs of this appeal.
AFFIRMED.

. The original Exhibit Ganus No. 7, the green return receipt card, is not contained in the original record, apparently having been misplaced or lost. Ganus No. 7, however, is identical to plaintiffs Exhibit No. 4 which is contained in the record. The green return receipt card contained in the record where Ganus No. 7 should be located is actually the return receipt card of a letter sent on behalf of plaintiff in January, 1983, demanding that the premises be vacated.

. A list of items in that file subpoenaed by appellant disclosed the following:
(a) Certificate of insurance dated February 1, 1977 contained in an envelope showing a return address from Popeye’s Fried Chicken;
(b) An empty envelope with a notation on the front, "copy of insurance policy for Popeye”;
(c) An envelope bearing return address of Popeye's Fried Chicken containing a letter dated October 23, 1-975 postmark on the envelope of January 21, 1982;
(d) An envelope addressed to Mr. Ottermann containing insurance binders for 1976;
(e) Policy of insurance covering the period of time March, 1975 through March, 1978;
(f) A one-page letter dated January 6, 1982 from an attorney representing Popeye's Fried Chicken regarding a tax receipt;
(g) Another envelope with a return address of Popeye’s containing two slips of paper regarding a change of address and some apparent payment; and
(h) An empty envelope with return address of Popeye’s Fried Chicken.