CITY OF OMAHA, APPELLEE, V. WILLIAM J. YANCEY ET AL.,
APPELLANTS.

FILED APRIL 20, 1912.　No. 16,979.

1. **Judgment: CONCLUSIVENESS: NOTICE TO INDEMNITOR.** In an action
to recover from a contractor the amount paid by a city to satisfy
a judgment against it for damages resulting from his negligence
and breach of contract, personal notice advising him of the
original action, of the nature thereof, of the court and docket
number, of his right to make a defense and of his liability for
the amount of any judgment which might be rendered against
the city, is sufficient to show that the amount of damages fixed
by the judgment is binding on him. SEDGWICK, J., dissents.

2. **Appeal: SUFFICIENCY OF EVIDENCE: ABSTRACT.** Where appellant
relies for a reversal on the assignment that the only proof suffi-
cient to establish a fact in issue is incompetent, he should insert
such proof in his abstract with the objections, rulings and ex-
ceptions necessary to a review of that question.

3. **Contracts: CONSTRUCTION: CONTRACT FOR CONSTRUCTION OF SIDE-
WALKS.** The phrases, "from the first day of January, 1902, to
the 31st day of December, 1902," as used in a contract between
a city and a contractor who agreed to furnish materials and
construct sidewalks when ordered, *held* to refer to the ordering
of sidewalks by the city, and not to the furnishing of materials
and the construction of sidewalks by the contractor.

4. **Judgment: CONCLUSIVENESS: NOTICE TO INDEMNITORS.** In an action
by a city to recover over from contractors and their bondsmen
the amount paid by the city to satisfy a judgment for personal
injuries resulting from the contractors' negligence and breach
of contract, timely notice to the bondsmen of the pending action,
of an opportunity to make a defense, and of their own liability,
is sufficient to show that the judgment against the city is bind-
ing on them. SEDGWICK, J., dissents.

5. **Evidence: NOTICE BY MAIL.** In testimony that a letter containing
a notice was mailed, the word "mailed" implies the payment of
the necessary postage.

6. ———: ———: **PRESUMPTIONS.** A letter duly addressed, stamped
and posted is presumed to have reached the addressee in the
usual course of mails, but such a presumption may be rebutted
by proof.

7. ———: ———: ———: **QUESTION FOR JURY.** Testimony denying
the receipt of notice inclosed in a letter properly addressed,

stamped and mailed, does not overcome the presumption of law that the notice was received, but presents a question of fact for the jury.

APPEAL from the district court for Douglas county: WILLIS G. SEARS, JUDGE. *Affirmed.*

*James H. Adams* and *Weaver & Giller*, for appellants.

*John A. Rine, W. C. Lambert* and *Clinton Brome*, contra.

ROSE, J.

Contractors who had been directed to build 50 feet of sidewalk along the east side of Fifteenth street between Ohio street and Spring street in Omaha made and left unprotected an excavation in the sidewalk space at that place. Lizzie Wright fell into it and was injured. In an action against the city for damages for personal injuries caused in the manner stated, she recovered a judgment for $5,000. The city paid the judgment and brought this suit against the contractors and their bondsmen to recover the amount so paid. From a judgment in favor of the city for the full amount of its claim defendants have appealed.

The first point urged by the contractors as a ground of reversal is that they are not bound by the judgment in the case of Wright against the city, because they had not been notified of the pendency of the action in which it was rendered. This position cannot be maintained. Two abstracts were filed, one by defendants and the other by the city. The latter states that a formal notice by the city attorney to the contractors, advising them of the action of Wright against the city, of the nature of the suit, of the court and docket number, of their right to make a defense and of their liability for the payment of any judgment which might be rendered against the city, was served personally on each of the contractors July 17, 1903. The suit against the city had been commenced June 6, 1903, and the case was tried at the October term, 1904. This

notice, if properly given, was sufficient. It is argued, however, by the contractors that the proof of notice, as stated, is incompetent, but it is not found in their abstract, nor is there anything therein to show it was erroneously admitted. While the city's abstract contains the evidence showing proof of notice, it does not show that the contractors objected to its admission or excepted to the ruling admitting it, and the bill of exceptions, under the circumstances disclosed, will not be examined for the purpose of sustaining this assignment of error.

The only other assignment argued by the contractors is that the trial court erred in holding them liable for an injury occurring subsequent to the termination of their contract. They assert that the excavation was made November 25, 1902; that their contract terminated by its own terms December 31, 1902; that the injury to the plaintiff in the suit of Lizzie Wright against the city occurred January 20, 1903; and that they were not required to protect the public from the excavation after the contract expired December 31, 1902.

By formal, written contract duly executed the contractors bound themselves: "To furnish material and construct therewith, and maintain, in a good and workmanlike manner, permanent sidewalk in the city of Omaha, according to plans and specifications on file in the office of the board of public works of said city, and as hereunto appended, as may be ordered from time to time by the mayor and city council of said city, from the 1st day of January, 1902, to the 31st day of December, 1902," and "to hold the said city harmless and free from all damages that may result through the injury of any person or thing by reason of any negligence or lack of care in or about the said work or property, and to guard all dangerous points and obstructions resulting from or about the said work, by providing and maintaining proper and sufficient safeguards and day and night signals for that purpose." One paragraph of the contract is as follows: "If the contractor shall fail to construct any sidewalk that may be

ordered within sixty days after a written order to construct the same has been given, unless prevented by storms, cold weather or other equally good cause, then the city shall have the right to cause such work and all further work required by the contract to be done and charge the difference between what it would have cost under the contract and what it did cost to such contractor or his bondsmen."

Do the phrases, "from the 1st day of January, 1902, to the 31st day of December, 1902," in the connection in which they are used in the contract, refer to furnishing materials and constructing sidewalks? Do they mean that the contract terminated on the latter date, and that work commenced before the end of the year could not be completed by the contractors under the same contract in 1903? The city insists that those phrases refer to the ordering of sidewalks, and that it had a right, any time before the end of the year 1902, to order the contractors to proceed with new work, which could be completed in 1903, if necessary. The city's interpretation seems to indicate the intention of the parties, as expressed by the entire instrument. The phrases, "from the 1st day of January, 1902, to the 31st day of December, 1902," seem to limit the immediately preceding clause, "as may be ordered from time to time by the mayor and city council of said city," rather than the more remote words "to furnish material and construct therewith." There is no intimation in the contract that the city did not have the right to direct the contractors, as late as December 31, 1902, to construct a sidewalk. Had such an order been given, how could it have been obeyed in a fraction of a day? The right of performance at a later date is clearly indicated by another provision. "If the contractor shall fail to construct any sidewalk that may be ordered within sixty days after a written order to construct the same has been given," says the contract, "unless prevented by storms, cold weather or other equally good cause, then the city shall have the right to cause such work * * * to be

done" and to charge the difference in cost to the contractor. This provision indicates an intention to give the contractors ample time to complete a sidewalk after having been ordered to construct it. The contractors not only agreed to construct permanent sidewalk in good workmanlike manner according to plans and specifications on file in the office of the board of public works, but they obligated themselves to so "maintain" such walks. They were also required to furnish materials and to perform their work "to the satisfaction of the board of public works and the city engineer." If there should be an unfinished sidewalk, or if materials should be found unsatisfactory, on the last day of the year 1902, the contract, on that date, would clearly not be terminated in such a sense as to prevent the contractors from completing the sidewalk or from furnishing satisfactory materials to replace those rejected. In giving effect to every part of the instrument and to the expressed intention of the parties, it must be held that the dates fixing the beginning and the end of the period refer to the ordering of the sidewalk, and not to the construction thereof by the contractors. This interpretation permits the completion of work begun by the contractors and gives them the benefit of full performance, and relieves the city from the embarrassment of a divided responsibility for defects in materials or workmanship. These are factors which would naturally appeal to both parties in agreeing on terms. In this view of the instrument the contractors were required to protect the public from the dangers of their excavation, and this duty did not terminate at the end of the period for ordering sidewalks. For failure to do so they cannot escape liability on the ground that their contract had expired before the accident occurred. This assignment of error must therefore be overruled.

The bondsmen, F. A. Nash and D. P. Redman, are also seeking a reversal. Their interpretation of the sidewalk contract is the same as that of the contractors, Yancey and Redman. For reasons already stated they are not

entitled to relief on the ground that their liability ended before the accident occurred.

The bondsmen further argue that the judgment against them is erroneous because the city stopped the work of the contractors and prevented them from completing the sidewalk. This point is without merit for the reason that the evidence shows the work was temporarily suspended, as it should have been under the contract, on account of cold weather.

The bondsmen bound themselves as follows: "Now the condition of this obligation is such that if the said Yancey and Redman shall well and faithfully perform all the obligations under the said contract and according to the plans and specifications in the office of the board of public works of said city, then these presents shall become void, otherwise to remain in full force and effect." The bondsmen thus became liable for the damages resulting from the failure of the contractors to keep their agreement "to hold the said city harmless and free from all damages that may result through the injury of any person or thing by reason of any negligence or lack of care in or about the said work or property, and to guard all dangerous points and obstructions resulting from or about the said work, by providing and maintaining proper and sufficient safeguards and day and night signals for that purpose." As grounds of reversal of the judgment against them for the amount paid by the city to satisfy the former judgment for damages, the bondsmen now assert that they are not bound by the judgment therefor, and that the record thereof was erroneously admitted in evidence against them. The following copy of a letter dictated by the city attorney, with his signature omitted, was received in evidence:

"May 25, 1904.

"F. A. Nash and D. P. Redman, as bondsmen of Yancey and Redman under their sidewalk contract to the city of Omaha.

"Gentlemen: I desire to notify you that a new trial has

been granted in the case of Lizzie Wright v. The City of Omaha, Doc. 83, No. 317, and that the case will soon be on trial again.  If you desire to take part in the trial of said case, you will be afforded an opportunity to be represented by counsel, and make such suggestions as to the control of the case as may be proper.  You are doubtless aware that the negligence complained of in this case consists of the negligence of Yancey and Redman in the construction of the walks under their contract, and in the event of recovery against the city you will be held liable as bondsmen.

         "Yours very truly,

         "..................

               "City Attorney."

This letter, if signed by the city attorney, and delivered to the bondsmen, gave them sufficient notice. C. C. Wright testified:  He was city attorney.  He remembered dictating such a letter as that quoted and signing it and leaving it to be mailed.  It was addressed to the bondsmen.  The letters were to be mailed to them through the regular course of the United States mail.  So far as he knew this was done.  It was the proper course of this work.  He thought his stenographer would attend to it.  The letter had not come back to his department, to his knowledge.  His stenographer was called as a witness, identified the communication as a copy of a letter dictated by the city attorney to the bondsmen, and testified:  She mailed the letters in connection with her regular duties.  She was not sure of the date, but thought it was probably May 25, 1904.  She sent the letters in the regular course of mail and they never came back, to her knowledge.  They were inclosed in the regular envelope used by the legal department, with its card on them.  She had in a way a personal recollection of the letter because there had been trouble about finding the address of one of the bondsmen, and it was finally obtained from the assistant city attorney.  Though the copy quoted was admitted in evidence, the bondsmen contend that there was no proof of notice to

them of the former suit for the following reasons: There was no foundation for the introduction of the letter. There was no proof that postage on the letters was prepaid or that they were ever delivered. Each of the bondsmen denied on the witness stand that he had ever received the letter. They therefore insist that there is no competent proof of notice, and that the record of the judgment against the city was erroneously admitted to establish a liability against them. Is this position tenable? The city attorney testified that he dictated and signed the letters and left them in his office to be mailed. His stenographer testified that she mailed them. Without violating an act of congress the letters could not have been "mailed" without payment of postage. The meaning of her testimony is that the postage was paid.

In *National Butchers' & Drovers' Bank v. De Groot,* 43 N. Y. Super. Ct. 341, the court said: "A question was raised on the argument, as to the meaning of the term 'mailed.' The word is usually employed to designate the placing of letters or parcels in a post office, to be delivered under the public authority. The delivery of this class of mail matter is prohibited unless the postage thereon is prepaid. 2 U. S. Comp. St., secs. 3896, 3900. When the word 'mailed' appears as a note or memorandum in the official register of a deceased notary, it is consistent with reason and the actual meaning of the term to presume that it describes what that act in its common and ordinary performance calls for."

In *Rolla State Bank v. Pezoldt,* 95 Mo. App. 404, it was held: "The word 'mailed' as applied to notice of protest implies that the requisite postage was prepaid on the letter."

From the testimony in the present case the trial court was warranted in concluding that the letters, bearing sufficient postage, were committed to the United States mails. The rule is that a letter duly addressed, stamped, and posted is presumed to have reached the addressee in the usual course of mails. *National Masonic Accident*

*Ass'n v. Burr*, 44 Neb. 256. The presumption, however, is rebuttable, but a well-established principle applied in *Miller v. Wehrman*, 81 Neb. 388, was stated in an earlier case as follows: "Testimony positively denying the receipt of a written demand shown to have been properly mailed, stamped, and addressed does not overcome the presumption of law that it was received, but presents a question of fact for the jury." *National Masonic Accident Ass'n v. Burr*, 57 Neb. 437.

According to this rule it was for the trial court, acting by consent of the parties instead of a jury, to find from all the evidence whether the letters were delivered. In addition the city attorney testified that he told the bondsman Nash he ought to see the contractors and have the case tried and settled. The testimony is sufficient to sustain a finding that the bondsmen had sufficient notice of the original suit. They are bound by the amount of damages fixed by the former judgment.

AFFIRMED.

SEDGWICK and LETTON, JJ., concur in the conclusion.