WILLIAM N. METCALF, APPELLEE, v. HARTFORD ACCIDENT & INDEMNITY COMPANY, AN INSURANCE CORPORATION, APPELLANT.

126 N. W. 2d 471

Filed February 28, 1964. No. 35573.

Cline, Williams, Wright, Johnson, Oldfather & Thompson and Charles E. Wright, for appellant.

Healey & Healey, for appellee.

M. M. Maupin and Clinton J. Gatz, Jr., amici curiae.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

CARTER, J.

This is an action brought by the plaintiff on an automobile insurance contract issued by the Hartford Accident and Indemnity Company. A jury was waived. The trial court found for the plaintiff and entered judgment against the defendant in the amount of $6,423.52. The defendant appeals.

The defendant was the insurance carrier for the City Sanitary Exterminating Company. Its policy of insurance covered a 1958 Chevrolet station wagon belonging to the insured, providing liability coverage with limits of not less than $10,000 for bodily injury to each person

and not less than $5,000 for property damage for each occurrence arising out of the maintenance and use of the station wagon. By the terms of the policy defendant agreed to defend any suit alleging bodily injury or property damage payable under the terms of the policy and to pay all costs taxed against the insured and all interest accruing after the entry of judgment. On February 10, 1961, the station wagon, while driven by Robert A. Holder, was involved in an accident with the automobile of the plaintiff. Defendant was notified of the occurrence of damage. Plaintiff commenced an action against Holder for personal injury and property damage. Demand was made upon defendant to defend the action, which was refused. Holder employed counsel and defended the action. During the course of the trial the parties agreed upon a judgment in the amount of $4,500 and costs in the amount of $37.05, which was duly entered. No appeal was taken from this judgment and it has become final. Plaintiff commenced this action against the defendant insurance company to collect the judgment for $4,500 and the costs amounting to $37.05, and accrued interest thereon in the amount of $280.59. The foregoing facts are not in dispute.

The primary question is whether or not Robert A. Holder is an additional insured under the provisions of the insurance policy. The definition of the insured as contained in the insurance policy provides in part as follows: "The unqualified word 'insured' includes the named insured and also includes * * *, and (2) under coverages A and C, any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission, * * *."

The insurance policy was issued to the City Sanitary Exterminating Company, a corporation. Monroe Usher is the president of the corporation and the sole owner of its stock. The station wagon was described in the policy

as being used for pleasure and business. The term "pleasure and business" was defined by the policy as follows: "The term 'pleasure and business' is defined as personal, pleasure, family and business use."

The evidence shows that Monroe Usher used the station wagon daily for his personal use. He drove it to and from work, keeping it at his home at night. His wife drove the station wagon when she needed it, and it was driven by the sons of Monroe Usher on occasion. While owned by the corporation, it was used by Monroe Usher as a family-purpose car, a use within the purposes of use as defined in the insurance policy.

Monroe Usher had a son, Douglas, who was approximately 17 years of age on February 10, 1961. He had an automobile which was maintained for his use which was shopped for repairs on the above date. He requested permission of his father to use the station wagon during the evening of February 10, 1961, for the purpose of transporting Robert A. Holder and two young ladies to and from a basketball game. Permission to so use the station wagon was granted. Nothing was said about any restrictive use or operation of the station wagon that evening. There is evidence in the record that Monroe Usher had told Douglas on previous occasions that he was not to permit anyone else to drive the family cars while he was using them. There is evidence in the record that the automobile used by permission of the father was not to be driven outside the city of Lincoln. The latter evidence is not material here, for the reason that the accident did not occur during the period of the alleged deviation.

Douglas proceeded to take Holder and the two girls to the basketball game. Thereafter they proceeded north of Lincoln for several miles, Douglas doing the driving. Douglas developed a headache and he either requested or permitted Holder to assume the operation of the automobile. After their return to Lincoln, and while Holder was driving, the accident occurred which

became the subject of the present litigation.

It is contended by the defendant that the omnibus clause of the policy does not make Robert A. Holder an additional insured for the reason that he was not granted permission by the insurer or the named insured to operate the station wagon. The plaintiff contends on the other hand that permission was given to Douglas Usher to use the station wagon and that he was using it even though it was being operated by Robert A. Holder.

No issue is here made that there is any difference in meaning of the terms "use" and "actual use" that would affect liability under the omnibus clause of the policy. Some courts have made a distinction as an escape from the strict interpretations placed on the words "actual use." Protective Fire & Cas. Co. v. Cornelius, *ante* p. 75, 125 N. W. 2d 179. We think the effort to place different meanings on the two terms creates a distinction without a difference and that liability or nonliability does not depend upon which of the two terms are used in the language of the policy.

We think the correct rule is stated in Maryland Cas. Co. v. Marshbank, 226 F. 2d 637, wherein it is said: "As the basis for a contrary conclusion the plaintiff seeks to read the term 'use of the automobile' as contained in the policy definition as the equivalent of 'operation of the automobile' and on this premise it argues that Marshbank did not give permission to Charles to operate his automobile. We think, however, that the premise is unsound and that the plaintiff is attempting to create an ambiguity in the language of the policy definition in order by construction to resolve it in its favor. To us the language of the clause seems so clear as to require no construction. The fallacy in the plaintiff's position is that the words 'use' and 'operation', which it seeks to equate as synonymous, are in this setting words of quite different meaning. For the 'use' of an automobile by an individual involves its employment for some purpose or object of the user while its 'operation' by him involves

his direction and control of its mechanism as its driver for the purpose of propelling it as a vehicle. It is perfectly clear that an automobile is being used by an individual who is traveling in it regardless of whether it is being operated by him or by another. It is only the actual or particular use of the automobile at the time of the accident by the individual who is claiming to be an additional insured that he must show to have been with the permission of the named insured if he is to come within the definition of the policy here involved. Accordingly since it was proved that Charles had such permission it was unnecessary to show that he also had permission to act as driver of the automobile. This is the view taken generally in this country * * *." See, also, Johnson v. State Farm Mut. Automobile Ins. Co., 194 F. 2d 785; Persellin v. State Automobile Ins. Assn., 75 N. D. 716, 32 N. W. 2d 644; Schimke v. Mutual Automobile Ins. Co., 266 Wis. 517, 64 N. W. 2d 195.

Defendant asserts the result is controlled by Witthauer v. Employers Mut. Cas. Co., 149 Neb. 728, 32 N. W. 2d 413; State Farm Mut. Automobile Ins. Co. v. Kersey, 171 Neb. 212, 106 N. W. 2d 31; and Christensen v. Rogers, 172 Neb. 31, 108 N. W. 2d 389. We think these cases are distinguishable. In the Witthauer case this court said with reference to the alleged permittee: "His supervisors did not know that he was using the truck. He had not asked permission to take the truck that noon to go to lunch and hence specific permission was neither denied nor granted. He had never asked permission to take the truck to go to lunch. He had never used it for that purpose before. He took the truck without permission. He was not on any company business when making the trip. He had no specific authority to make the trip and it was contrary to his general orders." Under these findings of fact this court held under a similar omnibus clause that the actual use of the truck at the time of the accident was without the permission of the named insured. It is not, under the circumstances

shown, authority for denying liability in the instant case where it is admitted that permission was given.

In the Kersey case the court denied liability for the reason that the minor daughter of the insured had neither express nor implied permission to drive the automobile on the public highway. Without permission she was not an additional insured under the standard omnibus clause of insured's policy. The case is not authority for the contentions advanced by the defendant.

In the Rogers case there was no issue involving liability under an insurance policy. The question there raised was whether or not the family-purpose doctrine should be extended to include third persons not members of the owner's family who operated the family-purpose automobile with the son's permission but without the father's knowledge or consent. This court held: "We conclude that the initial permission of an automobile owner to members of his family to use a family-purpose car does not include authority to delegate the driving of the automobile to a third person not a member of the family." Such issue in no way bears upon the contractual liability assumed by a written insurance contract.

We conclude that the previous holdings of this court do not sustain the position of the defendant nor militate against that of the plaintiff on the question of additional insureds as defined in the omnibus clause contained in the policy.

Defendant further contends that the judgment obtained by the plaintiff against Holder did not create an obligation to pay on the part of Holder and does not therefore create a liability against defendant under the terms of the policy. It appears that during the course of the trial of plaintiff's case against Holder an agreement was entered into which permitted plaintiff to take judgment against Holder for $4,500 and costs, the plaintiff agreeing not to attempt collection from any assets of Holder other than any insurance policies in

which he was in any manner covered. The personal injury and property damage coverage provisions of the policy obligated the insurer "to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages * * *." Defendant asserts that the judgment and agreement referred to create no legal obligation to pay on the part of Holder and, therefore, no obligation on the insurer to pay.

The defendant is obligated under its insurance policy to defend the suit brought against Holder, an additional insured. This it refused to do. Holder was thereupon required to engage an attorney and provide his own defense. With the insurance company denying liability, Holder was entitled to use all reasonable means of avoiding personal liability. It was to his personal interest to consent to the $4,500 judgment and accept an agreement from the plaintiff not to execute on his property other than any rights to indemnity he might have in the designated insurance policies. The matter is of no consequence to defendant if its claim of nonliability is correct. Since its claim of nonliability has no validity, and it having declined to defend the action when called upon to do so, the defendant is in no position to attack the judgment in the absence of fraud, collusion, or bad faith. If the judgment was obtained in good faith, the insured may not again litigate the issues that resulted in the judgment. City of Omaha v. Yancey, 91 Neb. 261, 135 N. W. 1044; Hawkeye Casualty Co. v. Stoker, 154 Neb. 466, 48 N. W. 2d 623. In the last case cited we approved the following quote from Fullerton v. United States Casualty Co., 184 Iowa 219, 167 N. W. 700, 6 A. L. R. 367: "We are cited to a clause of the contract to the effect that the right of the insured to maintain an action against the company is limited to cases of 'loss actually sustained and paid in money in satisfaction of a judgment after trial of the issue,' and it is said that the payment to Mrs. Jacobson by plaintiff was by way of a settlement, and not in satisfaction

of a judgment. But this provision can avail the appellant nothing in this case. It repudiated its obligation to assume and carry the defense to final judgment; and, having abandoned the case, it left the assured at liberty to take up the defense and contest the claim to final judgment, or, if so advised, to make the most favorable settlement possible."

"It is a well-settled principle that where a person is responsible over to another, either by operation of law or express contract, and he is duly notified of the pendency of the suit against the person to whom he is liable over, and full opportunity is afforded him to defend the action, the judgment, if obtained without fraud or collusion, will be conclusive against him, whether he appeared or not." 27 Am. Jur., Indemnity, § 35, p. 478. See, also, 42 C. J. S., Indemnity, § 32, p. 613; 50 C. J. S., Judgments, § 811, p. 360; Hawkeye Casualty Co. v. Stoker, *supra;* Jones v. Southern Surety Co., 210 Iowa 61, 230 N. W. 381; American Fidelity & Casualty Co. v. Williams (Tex. Civ. App.), 34 S. W. 2d 396.

Fraud or collusion in the obtaining of the judgment against Holder was not pleaded nor proven in the instant case. Defendant asserts the unreasonableness of the judgment awarded plaintiff against Holder. Assuming that the unreasonableness of such a judgment bears upon the question of fraud or collusion, we point out that this case was tried to the court and that the judgment of the court has the effect of a jury verdict. There was evidence in the record that the judgment was reasonable and within the range of a possible jury verdict. The trial court's judgment was supported by evidence and, it not being clearly wrong, no basis exists for any interference by this court with the judgment entered.

We necessarily conclude that the judgment that plaintiff obtained against Holder created a legal liability within the meaning of the policy. The judgment, interest, and costs in the amount of $4,817.64 were properly in-

cluded in the judgment against the defendant.

The trial court allowed plaintiff an attorney's fee of $1,605.88. Defendant assigns this as error in that the allowance is unauthorized and, if authorized, it is excessive. Section 44-359, R. R. S. 1943, provides that in all cases where the beneficiary or person entitled thereto brings an action on an insurance policy, the court, upon rendering judgment against the insurer, shall allow the plaintiff a reasonable sum as an attorney's fee to be taxed as costs and, if the cause is appealed, an additional attorney's fee shall be allowed by the appellate court for the appellate proceedings.

In Andrews v. Commercial Cas. Ins. Co., 128 Neb. 496, 259 N. W. 653, the court dealt with this issue in the following language: "The statute authorizes a reasonable sum as an attorney's fee to be taxed as costs in addition to a judgment on a liability insurance policy. Comp. St. 1929, sec. 44-346. While the allowance is reviewable on appeal, the trial court, in view of all the facts and circumstances, determines in the first instance, in the exercise of sound discretion, what is a reasonable sum. An arbitrary percentage of the recovery on the policy is not necessarily the test. Among the factors in the problem, the court may consider the amount involved; the responsibility assumed; the questions of law raised; the time and labor necessarily required in the performance of duties; the result of service performed; professional diligence and skill. In re Estate of Rhea, 126 Neb. 571. Whatever is shown in these particulars or observed by the trial judge in the course of the proceedings is open to him for consideration. With these factors in mind, there does not seem to have been an abuse of discretion or an excessive allowance, when the entire record is considered."

The trial court in the case before us allowed an attorney's fee in the amount of 33⅓ percent of the judgment. There is evidence in the record that plaintiff's attorney was handling the case on a contingent fee

basis, although the percentage of the recovery to be retained as an attorney's fee is not stated. The allowance of a reasonable attorney's fee under section 44-359, R. R. S. 1943, has no relation to the fee contracted for on a contingency basis. The contingent fee involves risks that are not pertinent to a reasonable attorney's fee for services rendered. There is no evidence in the record as to what constitutes a reasonable attorney's fee for the services rendered in the case. The trial court in fixing the attorney's fee was governed solely by the proceedings had before him and what he observed therein. After considering all the elements to be considered in fixing an attorney's fee as herein stated, we think the amount allowed is excessive. We fix the amount of the attorney's fee in the district court at $1,000.

In the instant case the trial court included the attorney's fee allowed as a part of the judgment on which interest was allowed at 6 percent per annum from the date of the judgment. Defendant assigns this as error. An attorney's fee allowed under section 44-359, R. R. S. 1943, is taxable as costs and constitutes no part of the judgment. Wirtele v. Grand Lodge, A.O.U.W., 111 Neb. 302, 196 N. W. 510. Interest is properly chargeable on the judgment. § 45-103, R. R. S. 1943. We have found no authority for assessing interest on attorney's fees constituting no part of the judgment.

We modify the judgment by reducing the attorney's fee allowed by the trial court to $1,000 without interest. The judgment of the district court is otherwise affirmed. An attorney's fee of $400 is allowed for services in this court to be taxed as costs.

AFFIRMED AS MODIFIED.