**UNIVERSAL UNDERWRITERS INSURANCE COMPANY, a Corporation, and Masid Chevrolet-Oldsmobile & Cadillac, Inc., a Corporation, Appellants,**

v.

**Amelia G. WAGNER, Henry Gritzfeld, Jr., and Katherine G. Linder, as Executors of the Estate of Henry Gritzfeld, Deceased, and Western Mutual Insurance Company, a Corporation, Appellees.**

**WESTERN MUTUAL INSURANCE COMPANY, a Corporation, Appellant,**

v.

**UNIVERSAL UNDERWRITERS INSURANCE COMPANY, a Corporation, Masid Chevrolet-Oldsmobile & Cadillac, Inc., a Corporation, and Amelia G. Wagner, Henry Gritzfeld, Jr., and Katherine G. Linder, as Executors of the Estate of Henry Gritzfeld, Deceased, Appellees.**

Nos. 18296, 18297.

United States Court of Appeals
Eighth Circuit.

Nov. 7, 1966.

M. M. Maupin, of Maupin, Dent, Kay & Satterfield, North Platte, Neb., for Universal Underwriters Ins. Co. and others. C. J. Gatz, North Platte, Neb., was with him on the brief.

Milton C. Murphy, of Murphy, Pederson & Piccolo, North Platte, Neb., for Western Mut. Ins. Co.

Robert G. Simmons, Jr., of Wright, Simmons & Hancock, Scottsbluff, Neb., for appellees Amelia G. Wagner, Henry Gritzfeld, Jr. and Katherine G. Linder. Floyd E. Wright and James R. Hancock, Scottsbluff, Neb., were with him on the brief.

Before VOGEL, Chief Judge, and VAN OOSTERHOUT and LAY, Circuit Judges.

LAY, Circuit Judge.

This is an action brought by Western Mutual Insurance Company for a declaratory judgment under Title 28, U.S.C. § 2201. Western seeks a determination that its coverage to its assured Henry G. Gritzfeld [1] is excess coverage and not primary, as against alleged coverage issued by Universal Underwriters Insurance Company to the Masid Chevrolet-Oldsmobile & Cadillac, Inc., owner of a car loaned to Gritzfeld.

Gritzfeld filed a cross claim against Universal and Masid, as well as a counterclaim against Western seeking protection of the coverage of both companies.

The controversy arose when Gritzfeld was involved in an Oklahoma accident on April 7, 1963, driving the Masid automobile. Third parties were seriously injured. The details of the accident and the demands by the respective parties are incidental to these proceedings.[2]

1. After the death of Gritzfeld on July 30, 1964, executors of his estate were substituted for Gritzfeld as parties defendant.

2. The present declaratory action was filed July 19, 1963; this case was tried on January of 1965 before the Honorable Robert Van Pelt and the lower court's memorandum opinion is dated July 19, 1965.

At the time of the filing of the complaint, Western alleged that the claims and demands against Gritzfeld had been made in the sum of $285,000 and that

Universal's coverage would give Gritzfeld the additional coverage of $300,000 for any one person and $500,000 for any one accident. This was under the Masid policy. The coverage of Western was $25,000 for any one person and $50,000 for any one accident.

Jurisdiction is alleged under 28 U.S.C. § 1332.

The trial court granted Gritzfeld a declaratory judgment against both Western and Universal. Primary coverage was afforded Gritzfeld under the Universal policy and Western's policy provided only excess coverage. The trial court found Universal must provide a defense, pay for the investigation and defense costs. Western is denied affirmative relief (in form only). Universal was ordered to pay any judgment rendered against Gritzfeld to the extent of its policy limits. The practical effect of the judgment is to allow Western to escape without any obligation whatsoever and to become completely absolved from any liability except to the extent that Universal's policy does not pay. Universal and Masid appeal from the judgment.[3] However, Western files a separate appeal from the lower court's order denying attorney fees against Universal. We affirm.

Western insured the Gritzfeld automobile, a 1962 Rambler. This was damaged in a collision in March of 1963. In April of 1963, Gritzfeld entered into an agreement with Masid to repair his car. Masid testified a Chevrolet was furnished Gritzfeld for use and operation while the Rambler was being repaired by Masid. On April 7, 1963, Gritzfeld was driving the Masid automobile (the Chevrolet) in the State of Oklahoma and was involved in a serious personal injury accident. The claims mentioned above arise out of this accident of April 7, 1963.

Gritzfeld's policy with Western contained the following proviso:

"* * * provided, however, the insurance with respect to a temporary substitute automobile or nonowned automobile shall be excess insurance over any other valid and collectible insurance."

It is agreed that Gritzfeld did not come within any of the definitions of the word "insured" in the Masid policy, unless the provisions of the "customer rental coverage" would apply. The trial court did not reach such issue.[4] The policy did not

---

settlement for the sum of $13,009 or less was impossible at that time. Notice of appeal was filed by Universal and Masid on November 15, 1965. On January 27, 1966, a stipulation was entered into and included in the record by all the parties, that subsequent to the commencement of this case suits had been filed in the Western District of Oklahoma by third parties and that verdicts were entered on September 17, 1965, for plaintiffs Harold Eugene Ralph $26,614.04, Aloha S. Ralph $15,421.91, and Katherine Ann Ralph $10,286.95 against Gritzfeld's executors. By agreement with all parties, without waiving any rights to this action the judgments with interests and costs were paid and satisfied by the plaintiff Western Mutual Insurance Company herein with the exception of $491.80. The latter sum was paid by the defendant executors. The stipulation is likewise made that Western expended in total attorney fees and costs the sum of $10,-667.33 in defending Gritzfeld. Universal defended Masid. Masid was joined as a party defendant and evidently was not held in the judgment as a joint party.

3. Judgment below was only against Universal. Discussion will be confined only to the appellant Universal.

4. Masid's policy with Universal provided in part as follows:
"With respect to the insurance under coverages A, B, and D the unqualified 'insured' includes the named insured and also includes: (1) any partner, employee, director or stockholder thereof while acting within the scope of his duties as such, and any person or organization having a financial interest in the business of the named insured covered by this policy, and (2) * * * or a member of the household of the named insured. * * *"
"Endorsement Extending Customer Rental Coverage.
"Such insurance as is afforded by the policy for Bodily Injury Liability and for Property Damage Liability applies

have a general omnibus clause covering persons using the car with the permission of the assured.

The primary issue concerns the coverage afforded to Gritzfeld, if any, under the Universal policy. Universal denies any coverage.

## JURISDICTION

■ First, appellant seeks to destroy jurisdiction by an attempt to realign the parties. It is alleged, Western, the complainant in this action, is a citizen of Iowa. Defendant Universal is a citizen of Missouri, and defendant Masid and Gritzfeld are citizens of Nebraska. Jurisdiction, being dependent in part upon diversity of citizenship between parties plaintiff and defendant, is therefore proper on its face. (28 U.S.C. § 1332) However, Universal asks that Gritzfeld be realigned as a party plaintiff. If this is accomplished, Gritzfeld and Masid both being citizens of Nebraska, diversity jurisdiction would be defeated. Such diversity must exist between all plaintiffs on one hand and all defendants on the other.

Universal claims Western and Gritzfeld are not really adverse parties and do not have any controversy between them; they both seek to assert the primary obligation of Universal to Gritzfeld since Universal's policy provides the greater coverage and benefit to Gritzfeld.

■ It is the duty of the federal courts to look beyond the pleading and to arrange the parties according to their sides in the dispute. The court must inquire into "the principal purpose of the suit" and the "primary and controlling matter in dispute." The controversy must be "actual" and "substantial". Dryden v. Dryden, 8 Cir., 265 F.2d 870; Rock Island Millwork Co. v. Hedges-Gough Lumber Co., 8 Cir., 337 F.2d 24; Thomson v. Butler, 8 Cir., 136 F.2d 644, cert. denied, 320 U.S. 761, 64 S.Ct. 69, 88 L.Ed. 454, reh den 320 U.S. 813, 64 S.Ct. 156, 88 L.Ed. 491; City of Indianapolis v. Chase National Bank, 314 U.S. 63, 62 S.Ct. 15, 86 L.Ed. 47.[5]

■ Western and Gritzfeld both contend that there existed a controversy between them at the time of the filing of the complaint. The motion to realign the parties was filed on March 17, 1964, but was not decided until June 25, 1964. On the 18th of June, 1964, Gritzfeld and Western stipulated coverage was afforded to Gritzfeld under the Western policy but Western contended it was only excess coverage because of Universal's policy. It is argued this stipulation withdraws Western's claim that it did not afford any coverage to Gritzfeld in the particular action.

with respect to any automobile owned by the named insured and rented to a customer of the named insured but only while such customer's automobile is temporarily left in the custody of the named insured for service or repair."

Appellants contention is that Masid "rented" to Gritzfeld the car involved. If so, Gritzfeld would become an assured under the policy. Appellees contend the recent decision of Farm Bureau Ins. Co. v. Allied Mutual Ins. Co., 180 Neb. 555, 143 N.W.2d 923 (1966) affirms coverage under such an endorsement. Whether there existed a "rental" between the garage and the customer in the present case, however, is a factual determination which the trial court avoids. Masid's contention was that it was not a rental agreement between he and the customer but that the car had been furnished Gritz-

feld only as a "courtesy". Absent such a finding, we have difficulty passing on this issue since no cross appeal has been perfected by the appellees.

5. Western contends even if there was not a controversy there is no concern, because Gritzfeld and Masid are not indispensable parties to the action and could have been dismissed.

Western never presented a motion to the trial court. Such an application cannot be entertained now in the appellate court. This court is controlled by the record made in the trial court. See Schuckman v. Rubenstein, 6 Cir., 164 F.2d 952; Levering and Garrigues Co. v. Morrin, 2 Cir., 61 F.2d 115, 121, affirmed on other grounds, 289 U.S. 103, 53 S.Ct. 549 and 77 L.Ed. 1062. Western cannot dismiss one of the parties on appeal to preserve jurisdiction.

Universal argues, in effect, that the stipulation demonstrates the entire claim of Western against Gritzfeld to be legally baseless. Without alleging 28 U.S.C. § 1359, pertaining to collusive joinder, Universal lays bare the inference by saying, "that the position of Western was identical with the legal position of Gritzfeld, and they worked together on this litigation."

The question of realignment, involving jurisdiction, must be tested at the time of filing of the complaint. Texas Pac. Coal & Oil Co. v. Mayfield, 5 Cir., 152 F.2d 956; B. J. Van Ingen & Co., Inc. v. Burlington County Bridge Comm., D.C. N.J.1949, 83 F.Supp. 778. See also, First Trust & Savings Bank v. Iowa-Wisconsin Bridge Co., 8 Cir., 98 F.2d 416.

The Supreme Court in testing realignment has said:

" * * * the proper course is not to try out the issues presented by the charges * * * but to determine the issue of antagonism on the face of the pleadings and by the nature of the controversy." Smith v. Sperling, 354 U.S. 91 at 96, 77 S.Ct. 1112, 1115, 1 L. Ed.2d 1205.

However, even with the consideration of the stipulation a controversy is stated.

Gritzfeld was placed by *his* insurer, Western, in an undesirable position. On the one hand, Western said, "We do not provide anything but excess coverage since Universal has the primary coverage." Universal replied, "You are a stranger to us; we are not going to provide you any protection." Gritzfeld, in effect, was denied any insurance protection at all. According to Western's complaint and Universal's answer, theoretically, at this point, no one was even defending him.

If Gritzfeld had agreed with Western that there was only excess coverage pro-

vided, and sought only to assert primary coverage against Universal, then clearly we would have to agree that no controversy existed. However, Gritzfeld in his answer and counterclaim seeks basic protection from Western.[6] It is true that he seeks primary coverage from Universal, but such is an alternative theory. Although Universal's coverage was more beneficial to Gritzfeld, this fact does not weaken his claim that Western owes him more than just excess coverage. He asks Western to come to his defense and protect him unconditionally on basic limits. Therefore, we find that there was an actual and substantial controversy between Western and Gritzfeld. Gritzfeld should not be realigned with Western.

## DECLARATORY JUDGMENT

 Secondly, Universal argues this court should dismiss the appeal since this case does not come within the purview of the Declaratory Judgment Act. The Declaratory Judgment Act is not a command to the district court to take jurisdiction, and the exercise of jurisdiction under the Act lies within judicial discretion. Title 28 U.S.C. § 2201; Rule 57, Fed.R.Civil P.; Brillhart v. Excess Ins. Co., 316 U.S. 491, 494, 499, 62 S.Ct. 1173, 86 L.Ed. 1620, 1625, 1627.

Counsel urges that Western can find relief in state court. This case was commenced in January of 1963. It was not decided by the trial judge until June of 1965 and finally submitted on appeal in September of 1966. In the meantime all the tort cases have been filed, tried and judgments paid in Oklahoma. We submit, once jurisdiction is vested, the judicial process of the federal courts should not provide a quagmire of technical rules and obstruction for parties. There should be "a practical end" to litigation of this kind.[7]

---

**6.** According to the testimony of Gritzfeld's attorney, Western was very careful to avoid assumption of responsibility. He always felt that Western had no defense if Universal did not provide coverage and did not think Western would seriously

contend they did not otherwise protect Gritzfeld. R. 132–133.

**7.** Farmers Elevator Mutual Insurance Co. v. Carl J. Austad & Sons, Inc., a corporation. et al (8 Cir., Sept. 29, 1966), 366 F.2d 555, involved an action for declara-

This circuit has recognized the declaratory judgment procedure designed to equate rights of parties under insurance contracts in similar situations. United States Fidelity & Guaranty Co. v. Pierson, 8 Cir., 1938, 97 F.2d 560; Maryland Cas. Co. v. Texas Co., 8 Cir., 114 F.2d 952; Hanover Ins. Co. Massachusetts Bonding Dept. v. Travelers Indemnity Co., 8 Cir., 318 F.2d 306. See cases in Borchard, Declaratory Judgments, 636–637 (1941). This is the teaching of Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L.Ed. 617; Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826.

## MERITS OF CASE

Once it is determined that coverage exists under Universal's policy, it is conceded by appellant that the policies are controlled by Turpin v. Standard Reliance Ins. Co., 169 Neb. 233, 99 N.W.2d 26 (1959).

tory judgment between insurance companies. Judge Gibson expressed sound advice to insurance companies, lawyers and litigants when he said:

" * * * It appears to us that the responsible insurance companies should take steps to see that this 'round robin' of litigation is ended and that they assume their proper responsibilities in meeting the claim of Tatro's representative in the state court proceeding. *In Hanover* [Hanover Insurance Co., Massachusetts Bonding Dept. v. Travelers Indemnity Co. ([8 Cir.] 318 F.2d 306) *one insurance company did assume its responsibility by processing, defending and paying a judgment on the main claim; and then proceeded to litigate its legal contentions with the other insurance company. This would appear to be a much preferable practice in advancing the administration of justice.*" (our emphasis)

Many times third party claimants will not recover or the companies can resolve the differences without protracted litigation occurring under the guise of a declaratory action. Some circuits refuse to recognize a controversy until the third party matters are resolved. American Fidelity & Casualty Co. v. Pennsylvania Threshermen & Farmers' Mutual Casualty Ins. Co., 5 Cir., 280 F.2d 453; Travelers Indemnity Co. v. Standard Accident Insurance Co., 7 Cir., 329 F.2d 329;

" ' * * * When the driver's insurance is excess, it necessarily follows that the insurance of the owner is primary, and therefore the owner's insurer must bear the entire loss to the extent of the limits of the policy.' See also, Firemen's Ins. Co. of Newark, N. J. v. Continental Cas. Co. [170] Cal. App. [2d 698] 339 P.2d 602."

Western's policy had an "excess" clause making it secondary to "any other valid and collectible insurance". Therefore, the sole question remains, does Universal's policy provide coverage to Gritzfeld?

■ We are controlled by Nebraska law since it remains uncontroverted the policies were Nebraska contracts. Coverage is to be determined on April 7, 1963, the date of the accident.

■ The Nebraska omnibus statute, § 60–534 (R.R.S.1943),[8] was interpreted

Nationwide Mutual Ins. Co. v. Fidelity & Cas. Co., 3 Cir., 286 F.2d 91. If the third party cases had been tried before this case was filed difficult jurisdictional questions could have been avoided.

8. Sec. 60–534, R.R.S. 1943.
"Such *owner's policy of liability insurance:* (1) * * * (2) shall insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such motor vehicle or motor vehicles * * *"

Appellant urges the Nebraska omnibus statute is not extra-territorial in effect. The appellant overlooks the language of § 60–534 which specifically states that there is granted insurance "against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such motor vehicle or motor vehicles within the United States of America or the Dominion of Canada * * *." The law of conflicts of law in Nebraska teaches the place of performance governs as to matters of performance on the insurance policy but obligations imposed by the policy are governed by the law of the place of contracting. Exstrum v. Union Cas. & Life Ins. Co., 167 Neb. 150, 91 N.W.2d 632; Noel v.

in Protective Fire & Casualty Co. v. Cornelius, 176 Neb. 75, 125 N.W.2d 179. The Nebraska Supreme Court said:

"It is the law of this state that applicable statutes which exist at the time of making a contract of insurance enter into and form a part of it as if they were expressly referred to and incorporated therein."

The court in discussing § 60–534 stated:

"The statute is remedial in nature and has for its purpose the protection of the public against damages resulting from accidents arising because of the negligent use of automobiles by irresponsible and noninsured permittees. The statute should be construed to accomplish the purpose and policy of the legislation." 176 Neb. at 79, 125 N.W. 2d at 182.

"The purpose of the omnibus clause is to fix the liability of additional insureds and to eliminate ambiguities and defenses with reference thereto as a matter of public policy." 176 Neb. at 81, 125 N.W.2d at 183.

■ The lower court's reasoned opinion as to the status of local law in which it acts should not be overturned unless we are convinced that it is clearly erroneous. Indemnity Ins. Co. of North America v. Pioneer Val. Sav. Bank, 8 Cir., 343 F.2d 634; Jennings v. McCall Corp., 8 Cir., 320 F.2d 64; Citizens Ins. Co. v. Foxbilt, 8 Cir., 226 F.2d 641, 53 A.L.R.2d 1376; Buder v. Becker, 8 Cir., 185 F.2d 311.

The Nebraska court in *Cornelius* [9] stated the policy term "actual use" was in restricted form. If the policy in question was to be enforced as written there could be no coverage for *Cornelius* since there was not permission for the "actual use" by the insured. However, in the opinion, Judge Carter pointed out that the omnibus statute of Nebraska superseded the words "actual use" with the word "using" and effectively changed the coverage for the additional assured. The court clearly relates the omnibus statute as applying generally to all automobile policies and in no sense restricts it to only certified policies or non-responsible financial risks.[10]

Appellant relies upon the language of Metcalf v. Hartford Accident & Indemnity Co., 176 Neb. 468, 126 N.W.2d 471, and insists the court one year later withdraws from *Cornelius*. This time Judge Carter of the Nebraska court writes:

"[1] No issue is here made that there is any difference in meaning of the terms 'use' and 'actual use' that would affect liability under the omnibus clause of the policy. *Some courts have made a distinction as an escape from the strict interpretation placed on the words 'actual use'*. Protective Fire & Cas. Co. v. Cornelius, 176 Neb. 75, 125 N.W.2d 179. We think the efforts to place different meanings on the two terms creates a distinction without a difference and that liability or nonliability does not depend upon which of the two terms are used in the

Nat'l Union Fire Ins. Co., 124 Neb. 734, 248 N.W. 86; Young v. Order of United Comm'l Travelers, 142 Neb. 566, 7 N.W.2d 81.

9. Protective Fire & Casualty Co. v. Cornelius involved a loan of a used 1941 Chevrolet by the Owner-garage to a prospective buyer. Buyer was given the car over the weekend for the purpose of "working on it." The buyer and Cornelius were friends. During the course of the weekend, Cornelius drove the car with Buyer's permission when an accident occurred. Protective Fire Ins. Co. had a policy on an automobile owned by Cor-

nelius. Empire Fire and Marine Insurance Co. insured the Owner-garage. Protective Fire sought declaratory relief to determine which policy was the primary coverage for Cornelius.

Within the policy of Empire was an "omnibus" clause that read: "provided the *actual use* of the automobile is by the named insured or with his permission." 125 N.W.2d at 182.

10. A "certified" policy requires certain obligations of the insurer to protect third persons from a previously uninsured driver. See § 60–538, Nebr.R.R.S.1943.

language of the policy." (Our emphasis) [11]

Despite the evanescent reasoning in *Cornelius*, Judge Carter did not specifically overrule *Cornelius*.[12] Furthermore, the Nebrasaka court has, in fact, recently referred to the omnibus statute and *Cornelius* with approval. Farm Bureau Ins. Co. v. Allied Mutual Ins. Co., 180 Neb. 555, 143 N.W.2d 923 (decided July 8, 1966); Iowa Mutual Ins. Co. of DeWitt, Iowa, v. Meckna, 180 Neb. 516, 144 N.W. 2d 73 at 78 (decided July 8, 1966.) [13]

This court cannot decide *Cornelius* over again.

■■■ A federal court reviewing state law must accept the law as rendered by such state court in diversity cases, even if it feels the decision to be erroneous. Riteway Carriers v. Stuyvesant Ins. Co., 8 Cir., 213 F.2d 576; Transport Mfg. & Equip. Co. v. Fruehauf Trailer Co., 8 Cir., 295 F.2d 223 (1961); Yoder v. Nu-Enamel Corp., 8 Cir., 117 F.2d 488; Hawkeye-Security Ins. Co. v. Davis, 8 Cir., 277 F.2d 765.

Argument is made that the Nebraska legislature has now passed LB 539 for the avowed purpose of clarifying § 60–534 and the Nebraska Motor Vehicle Safety Responsibility Act. The trial court filed his memorandum opinion on July 19, 1965, and disposed of this amendment by saying:

"The court also takes cognizance of the Nebraska legislature's recent passage of an amendment to Nebr.Rev.Stat.

§ 60–561 (Reissue 1960). The amendment provides: ' * * * nor shall the provisions of 60–516 to 60–544 apply to any automobile liability policy which has not been certified as provided in sections 60–528 to 60–531 as proof of financial responsibility.' This amendment, taking effect 90 days after the adjournment of the legislature appears to be a departure from *current* Nebraska law. Where a statute is amended, it will be presumed that the language was intentionally changed to effect a change in or a departure from the old law. Hills v. Beurnett [Burnett], 172 Neb. 370, 109 N.W.2d 739 (1961), vacated [83 S.Ct. 914, 9 L.Ed. 2d 961], 372 U.S. 591 (1963); Ledwith v. Bankers Life Ins. Co., 156 Neb. 107, 54 N.W.2d 409 (1952). The amendment thus reinforces this court's conclusions as to the construction of current Nebraska law."

We fail to see any clear misconception or erroneous application to this interpretation, and, therefore, are bound by this decision.

*Cornelius* was decided in 1963. However, prior to the court's decision in July 1965, LB 539 was passed amending § 60–534 effective in November 1965.

■■■ Upon motion for judgment notwithstanding the verdict and new trial, the introducer's (LB 549) remarks were offered which stated that the Supreme Court of Nebraska in *Cornelius* had misconstrued the legislature's intent.[14] Appellant now argues a court of

11. Further confusion is in the court's reliance of Maryland Cas. Co. v. Marshbank, 3 Cir., 226 F.2d 637. Actually the *Marshbank* case decides that the words "use" and "operation" within a policy are not synonymous. The Nebraska court had prevously pointed this out in *Cornelius*.

12. The question as to the applicability of the Motor Vehicle Responsibility Act in the *Cornelius* case was raised on rehearing and the court nevertheless did not retreat from its previous position. See 44 Neb.L.Rev. 129, "The Omnibus Clause Its Application In Nebraska", Note 66 at 143.

13. Such approval apparently overlooks the amendment to § 60–534 in 1965 (LB 539). It appears the Nebraska court feels the omnibus clause is part of every automobile policy as a matter of public policy, regardless of what the legislature says. For similar construction see text and cases, infra n. 19. Nebraska could eliminate the problem if it followed California's enactment of a general omnibus clause applicable for all policies. See n. 18.

14. It is generally held, however, opinions of legislators should not be taken as persuasive of legislative purpose. 82 C.J.S. Statutes § 354; United States

appeals must apply the law at the time the judgment is reviewed. It argues the law has been changed since the judgment of the district court. It appears the law has been changed, but from thereon the parallelism is short lived. Appellant relies on this court's opinions in Magill v. Travelers Ins. Co., 8 Cir. 1943, 134 F.2d 612 and Anderson v. Sanderson and Porter, 8 Cir., 146 F.2d 58.

In *Magill* and *Anderson* this court followed Vandenbark v. Owens-Illinois Glass Co., 311 U.S. 538, 61 S.Ct. 347, 85 L.Ed. 327 (1949). The general rule cited therein is found in United States v. Schooner Peggy, 1 Cranch 103 at 110, 2 L.Ed. 49:

> "But if subsequent to the judgment and before the decision of the appellate court the law intervenes and positively changes the rule which governs, the law must be obeyed or its obligation denied."

In *Vandenbark* the court mentioned in *Schooner Peggy* "it expressed a caution against retrospective operation between private parties." Some states presume their new decisions to operate retroactively.[15] Here we are dealing with a statute which does not reflect that it is retroactive.

Under the circumstances, we still must look to the applicable state law to determine the effect this statute would be given if the same matter were before the Nebraska Supreme Court. The Nebraska court has ruled on several occasions that

a legislative act will operate only prospectively and not retrospectively, unless the legislative intent and purpose that it should operate retrospectively is clearly disclosed.[16]

Therefore, Appellant can find little relief from the efforts to overturn *Cornelius* through LB 539.

■ Nevertheless, Universal persistently pursues its goal contending if coverage applies recovery against Universal is limited by the Nebraska Safety Responsibility Act ($10,000/$20,000) notwithstanding greater coverage provided by the policy.[17]

The trial court ruled Universal must afford coverage to the full extent of its policy rather than the minimum stated in the Nebraska statutes. The lower court again relies upon the *Cornelius* case. In *Cornelius*, the court concluded as follows:

> "The Empire Fire and Marine Insurance Company is primarily obligated to pay any judgment that may be rendered against *Swartzman, Cornelius,* or *Van Hoozer* for their negligence, *to the extent of its policy limits*." 125 N.W.2d 179, at 185. (Our emphasis)

Appellant argues, however, that this denies the express language of § 60–534. The statute reads in part as follows:

> "Liability policy; owner's policy; contents. Such owner's policy of lia-

---

v. Wrightwood Dairy Co., 315 U.S. 110, 62 S.Ct. 523, 86 L.Ed. 726.

15. See Vol. 1A, Moore's Federal Practice (2d Ed.) 3319.

16. State ex rel. Venango Rural High School District v. Ziegler, 173 Neb. 758, 115 N.W.2d 142; County Board of Supervisors of Platte County v. Breese, 171 Neb. 37, 105 N.W.2d 478; Dell v. City of Lincoln, 170 Neb. 176, 102 N.W.2d 62; Arterburn v. Vandemoer, 157 Neb. 68, 58 N.W.2d 606, cert. denied Arterburn v. Hahn, 346 U.S. 926, 74 S.Ct. 316, 98 L.Ed. 419; School District of Omaha v. Adams, 151 Neb. 741, 39 N.W.2d 550; and State ex rel. City of Grand Island v. Union Pacific Railroad Co., 152 Neb. 772, 42 N.W.2d 867.

17. Universal also claims Gritzfeld must reimburse payments paid on his behalf. The contract of insurance of Universal, Condition 8, reads:
"Financial Responsibility Laws—Coverages A and B: When this policy is *certified* as proof of financial responsibility for the future under the provisions of the motor vehicle responsibility law of any state or province, * * * The insured agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except for the agreement contained in this paragraph."
The obvious answer to this argument is that this policy was never certified.

bility insurance: * * * (2) shall insure the person named therein and any other person, as *insured,* using any such motor vehicle or motor vehicles with the express or implied permission of such named insured, * * * *subject to limits exclusive of interest and costs, with respect to each such motor vehicle as follows: Ten thousand dollars because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, twenty thousand dollars because of bodily injury to or death of two or more persons in any one accident, and five thousand dollars because of injury to or destruction of property of others in any one accident."* (Our emphasis)

We submit the holding in *Cornelius* appears to be directly contrary to the express language of § 60–534 of the Nebraska Revised Statutes. It is not clear in *Cornelius* whether this precise issue was argued or raised.

Clearly where the policy is a certified policy or where the Financial Responsibility Law is specifically incorporated into the policy regardless of certification, the courts apply the financial limits. E. g. Landis, for Use of Talley v. New Amsterdam Casualty Co., 347 Ill.App. 560, 107 N.E.2d 187 (1952).

On the other hand, cases cited by appellee which deal with a general omnibus statute aside from the Financial Responsibility Law, such as found in Shanahan v. Midland Coach Lines, 268 Wis. 233, 67 N.W.2d 297 (1954) are likewise of little help. Appellee relies upon several California cases. However, the California statute was different in language than the Nebraska statute.[18]

The amendment to § 60–534 changed "[s]uch owner's policy of liability insurance" to read "a motor vehicle liability policy" in order to conform with the definition set out in § 60–533, concerning "certified" policies. This could be an indication that the legislature and the Nebraska Supreme Court in *Cornelius* distinguished between a "motor vehicle liability policy" as defined in § 60–533 and an "owner's policy" as set out in § 60–534.[19] In reading this section in conjunc-

18. Wildman v. Government Employees' Insurance Co., 48 Cal.2d 31, 307 P.2d 359 (1957). See also American Automobile Ins. Co. v. Republic Indemnity Co., 52 Cal.2d 507, 341 P.2d 675 (1959).

It is interesting to note that the California statute was amended in 1957 to read as follows:

"A 'motor vehicle liability policy,' *as used in this chapter* means an owner's policy or an operator's policy or both of liability insurance, *certified as provided in Section 414 as proof of ability to respond in damages,* issued by an insurance carrier authorized to transact such business in this State to or for the benefit of the person named therein as assured." West's Annotated Calif.Code, Veh.Code, §16450, as amended in 1957.

In 1964 the Court of Appeals of the 9th Circuit, applying California law, held under this new provision that automatic coverage afforded to the permissive user of the vehicle was not limited by the financial responsibility laws when the policy was not certified. Truck Insurance Exchange v. American Surety Company of New York, 338 F.2d 811 (1964). In

Pacific Indemnity Co. v. Universal Underwriters Ins. Co., 232 Cal.App.2d 541, 43 Cal.Rptr. 26, 27 it was held:

"* * * that as a matter of public policy the provisions of Vehicle Code § 415 (now Vehicle Code §§ 16450–16455), as they existed in 1957, are to be read into every automobile liability policy effective in this state."

However, in 1963, California passed a general omnibus statute applicable to every policy. Sec. 11580 West's Annot. Calif.Insurance Code, Chap. 1259, Stats. 1963, p. 2780.

19. See Jenkins v. Mayflower Insurance Exchange, 93 Ariz. 287, 380 P.2d 145, at p. 147, where the Arizona court said:

"Where the basis upon which *this* act has been declared constitutional is, 'preventing financial hardship and possible reliance upon the welfare agencies,' we cannot constitutionally allow artful distinctions between 'motor vehicle liability policy,' 'automobile liability policy' or 'policy of insurance' to defeat the purpose of the act. * * *

"We hold, therefore, that the omnibus clause is a part of every motor ve-

tion with § 60–539 [20] one could conclude that an "owner's policy of liability insurance" can include both a *certified policy*, as defined under § 60–533, and a *general automobile policy of liability insurance*. We believe a permissible conclusion under the holding in *Cornelius* is that § 60–534 must be read in conjunction with § 60–539 and the latter portion of § 60–534 does not apply to a general automobile policy.

Thus we hold that the lower court properly held the Nebraska reviewing court applies the omnibus statute to all policies as a matter of public policy; that under Nebraska law coverage limited under § 60–534, before amendment, was not intended to apply to general automobile policies but only to certified policies. There-fore, Gritzfeld assumes a position of an assured and is entitled to full coverage under the policy of Masid (Universal).

## DUTY TO DEFEND

■■■ The lower court found that Universal was "obligated to defend Henry Gritzfeld and the executors of his estate, to pay for investigation and defense costs." [21] Such finding is ambiguous as to the extent Universal must share, if any, in the defense costs rendered on behalf of Gritzfeld by Western.[22] We do not feel this question is present here.

## ATTORNEY FEES

Western appeals the court's denial of attorney fees. We are also presented a

---

hicle liability policy, by whatever name it may be called."

It is interesting to note that the Arizona Supreme Court was interpreting a statute that now has the language that has been placed in the new amendment to the Code through LB 539. See note 13.

20. Sec. 60–539, Nebr.Rev.Stat. 1943, Reissue 1960.

"Liability policy; additional coverage; not covered in term. Any policy which grants the coverage required for a motor vehicle liability policy may also grant any lawful coverage in excess of or in addition to the coverage specified for a motor vehicle liability policy and such excess or additional coverage shall not be subject to the provisions of sections 60–501 to 60–569. *With respect to a policy which grants such excess or additional coverage the term motor vehicle liability policy shall apply only to that part of the coverage which is required by sections 60–533 to 60–543.*" (Emphasis added)

21. Gritzfeld erroneously, we think, was denied relief against Western obligating the latter to defend. No appeal was taken by Gritzfeld from such an order.

22. Although the lower court found Universal had an obligation to defend Gritzfeld it would appear as between the two insurers Western had the same obligation. Gritzfeld's insurance contract with Western clearly defined that Western had a duty to defend Gritzfeld. This obligation was a personal one by the insurer to his insured. Such duty was separate and distinct from any disclaimer of primary coverage by Western. American Fidelity & Casualty Company v. Pennsylvania Threshermen & Farmers' Mutual Casualty Ins. Co., 5 Cir., supra; Continental Casualty Co. v. Zurich Ins. Co., 57 Cal.2d 27, 17 Cal.Rptr. 12, 366 P.2d 455 (1961); General Accident Fire & Life Assurance Corp. Ltd. v. Smith & Oby Co., 6 Cir., 272 F.2d 581, at 586, 77 A.L.R.2d 1134; Bituminous Casualty Corp. v. Travelers Ins. Co., D.C., 122 F.Supp. 197, 204–205; Exchange Elevator Co. v. Marshall, 147 Neb. 48, 22 N.W.2d 403, (dicta that contribution recognized among co-sureties in Nebraska).

The California Supreme Court in discussing this situation stated as follows:

"Under general principles of equitable subrogation, as well as pursuant to the rule of prime importance—that the policy is to be liberally construed to provide coverage to the insured—it is our view that all obligated carriers who have refused to defend should be required to share in costs of the insured's defense, whether such costs were originally paid by the insured himself or by fewer than all of the carriers. A contrary result would simply provide a premium or offer a possible windfall for the insurer who refuses to defend, and thus, by leaving the insured to his own resources, enjoys a chance that the costs of defense will be provided by some other insurer at no expense to the company which declines to carry out its contractual commitments." 17 Cal.Rptr. at 18, 366 P.2d at 461.

request by Gritzfeld for fees in this court.[23]

The trial court denied fees to Western and allowed fees to Gritzfeld's counsel. Western argues it is entitled to recover attorney fees since it actually obtained full relief by the court's decision, even though it was denied an affirmative judgment.

Western was seeking declaratory relief to absolve itself from primary coverage on its own policy. The trial court could have assessed Western attorney fees of Gritzfeld. Western owed a defense to Gritzfeld, despite its claim that it afforded only excess coverage. We do not feel the intent of the statute was to provide fees to Western under these circumstances.

In view of our findings that coverage was provided in the Universal policy, we affirm the award of fees to Gritzfeld's attorneys. We further find that an additional fee in the sum of $1,000 should be allowed counsel for Gritzfeld's executors in this court against Universal.

Judgment affirmed.

---

**23.** The applicable Nebraska statute, § 44–359, provides:

"In all cases where the beneficiary, or other person entitled thereto, brings an action at law upon any policy of * * * liability, * * * against any company, person or association doing business in this state, the court, upon rendering judgment * * * shall allow the plaintiff a reasonable sum as an attorney's fee in addition to the amount of his recovery, to be taxed as part of the costs. If such cause is appealed, the appellate court shall likewise allow a reasonable sum as an attorney's fee for the appellate proceedings."