[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-16456

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 16, 2007
THOMAS K. KAHN
CLERK

D. C. Docket No. 03-00264-CV-1-P-L

TWIN CITY FIRE INSURANCE COMPANY, INC.,
ALABAMA RIVER PULP COMPANY, INC.,
HARTFORD CASUALTY INSURANCE COMPANY,

Plaintiffs-Appellants,

versus

OHIO CASUALTY INSURANCE COMPANY, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

**(March 16, 2007)**

Before ANDERSON and DUBINA, Circuit Judges, and VINSON,[*] District Judge.

ANDERSON, Circuit Judge:

---

[*] The Honorable Roger Vinson, United States District Judge for the Northern District of Florida, sitting by designation.

This is a diversity insurance coverage dispute governed by Alabama law. The district court granted summary judgment to the appellee, finding that a no-action clause in the policy bars coverage. We reverse and remand to the district court for further proceedings.

## I.  FACTS

The facts are undisputed. G.A. West & Co. ("West") agreed to supply labor to appellant Alabama River Pulp Co. ("ARP"). The contract between West and ARP provided, in part:

> To the fullest extent permitted by law, [West] shall indemnify and hold harmless ARP. . . from and against any and all claims, costs, losses and damages. . . arising out of or in any way related to the performance of the Work by [West] or the agents, servants, employees or Subcontractors [of West], in whatever manner the same may be caused, and whether or not the same may be caused, occasioned or contributed to by the negligence, sole or concurrent, of ARP. . . .

The contract also required West to obtain insurance to cover its indemnity obligation and to add ARP to its policies as an additional insured.

Both West and ARP were insured at the time of the accident underlying this action. ARP had a $1 million primary commercial general liability policy from appellant Twin City Fire Insurance Company ("Twin City"), a $2 million excess policy from Twin City, and a $10 million umbrella policy from appellant Hartford

2

Casualty Insurance Company ("Hartford Casualty") that was excess to both Twin City policies. West had a $1 million primary commercial general liability policy from Amerisure Insurance Company ("Amerisure") and, in excess of that policy, a $9 million commercial umbrella policy from appellee Ohio Casualty Insurance Company ("Ohio Casualty"). West named ARP as an additional insured on both the Ohio Casualty and the Amerisure policies.

An accident at ARP led to the insurance claims at issue in this case. James Dumas and Gerald Stabler, employees of West, suffered burn injuries from a ruptured condensate storage tank during the course and scope of their employment with West. They were not working on the tank or on anything related to the tank at the time. Rather, their work for West on ARP's premises brought them into the tank's vicinity. The parties agree that ARP's actions were the cause of the rupture.

Dumas filed negligence and wantonness claims against ARP on November 14, 2002. On January 2, 2003, ARP asked West and its insurers to defend and indemnify ARP in the Dumas litigation. Twin City and ARP filed the complaint in the instant case on May 1, 2003, seeking a declaratory judgment to resolve the respective insurance obligations. Stabler filed a similar tort action on August 28, 2003. ARP demanded a defense from West and its insurers in the Stabler action on October 17, 2003. ARP wrote separately to Ohio Casualty on December 2, 2003,

3

included medical reports, and advised Ohio Casualty that the verdicts would likely be in the multimillion dollar range, implicating its policy. In April 2004, ARP and Twin City amended the complaint in the declaratory action, adding Ohio Casualty and incorporating the Stabler litigation. Ohio Casualty answered on May 17, 2004 and denied coverage.

Ohio Casualty was also given the opportunity to participate in the settlement negotiations for the Dumas and Stabler litigation. On June 11 and July 5, 2004, ARP notified Ohio Casualty of an upcoming mediation of the Dumas and Stabler actions, and again requested Ohio Casualty's participation. Then ARP sent a letter to Ohio Casualty on July 20, 2004, the day before the mediation began, again inviting it to participate. Ohio Casualty did not attend the mediation or participate in the settlement.

Under the terms of the settlement, Amerisure agreed to pay its policy limit and fifty percent of the defense costs. Twin City agreed to contribute up to its primary policy limit. It and Hartford Casualty contributed the rest of the funds necessary to defend and settle the actions, pending resolution of this case.[1]

This declaratory action concerns who is responsible for the liability in excess

---

[1] Hartford Casualty was added as a plaintiff in the declaratory coverage action on August 9, 2004. It had already participated in the mediation that led to the settlement of the underlying tort actions.

of the Amerisure and Twin City primary policies. Twin City, Hartford Casualty, and ARP (hereinafter referred to collectively as "Twin City") seek reimbursement from Ohio Casualty for the costs of the settlement and defense. Twin City first claims that West owes ARP indemnity for all the settlement and defense costs, and that the Ohio Casualty policy covers that indemnity obligation. Alternatively, Twin City claims that ARP is an additional insured covered directly under the Ohio Casualty policy, such that Ohio Casualty must share the excess liability at least pro rata with Twin City and Hartford Casualty. Ohio Casualty denies coverage, claiming that it owes no part of the settlement or defense costs.

The district court granted summary judgment to Ohio Casualty and dismissed the action with prejudice against Twin City. The district court found that the liability falls under the indemnity agreement between West and ARP. The court, however, concluded that no coverage exists because a "no-action clause" in the Ohio Casualty policy required either Ohio Casualty's consent to a settlement, or final judgment after trial. The Dumas and Stabler settlement did not satisfy either condition. Twin City appealed.

## II. DISCUSSION

We review a district court's grant of summary judgment <u>de novo</u>. <u>Hilburn v.</u>

Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1225 (11th Cir. 1999). Summary judgment is appropriate when "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The issues in this appeal concern the interpretation of an indemnity contract and an insurance policy. As a federal court sitting in diversity, we apply Alabama law. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 79, 58 S. Ct. 817, 823 (1938). In Alabama, the interpretation of a contract, including an insurance contract, is a question of law reviewed de novo. Royal Ins. Co. of Am. v. Whitaker Contracting Corp., 242 F.3d 1035, 1040 (11th Cir. 2001).

A.    No-action clause.

Ohio Casualty's argument rests primarily on the no-action clause contained in the insurance policy it issued to West. The clause states: "There will be no right of action against us under this insurance unless. . . the amount you [West] owe has been determined by settlement with our consent or by actual trial and final judgment." Ohio Casualty argues that because there was neither a judgment against West nor a settlement to which Ohio Casualty consented, the no-action clause bars coverage.

We disagree. In Alabama, when an insurer has a right to defend its insured,

6

receives notice of settlement negotiations, and refuses to participate, the insurer waives the right to assert the no-action clause in a later suit to determine coverage. Liberty Mut. Ins. Co. v. Wheelwright Trucking Co., 851 So. 2d 466, 475 (Ala. 2002). The insurer becomes "bound to pay the amount of any settlement made in good faith," and for which coverage exists. Id.

The no-action clause must be deemed waived to avoid putting the insured in a precarious situation. Enforcing the clause on these facts would allow the insurer to refuse consent, force the insured to enter into an unconsented settlement, and then avoid coverage by claiming that there was no judgment and no consented settlement. That is a result the parties to the insurance contract could not possibly have intended. See BellSouth Mobility, Inc. v. Cellulink, Inc., 814 So. 2d 203, 216 (Ala. 2001) ("[I]t is the duty of the court to construe the contract so as to express the intent of the parties.").

An insurer that wishes to deny coverage thus has two choices. It may participate in the settlement pursuant to a reservation of rights, preserving the opportunity to later dispute coverage. Or it may refuse to participate, and become bound by any reasonable and good faith settlement of a claim that a court later determines falls under the policy's coverage.

In this case, Ohio Casualty clearly waived the protection of the no-action

7

clause. It concedes that it had a right to defend its insured West and a right to participate in any settlement. Further, Ohio Casualty had notice of the settlement and an opportunity to join the negotiations. ARP made formal demands for a defense on West's insurers, including Ohio Casualty, on January 2, 2003 and October 17, 2003. On December 2, 2003, ARP followed up with a letter to Ohio Casualty advising that the verdict would implicate its policy, and enclosed medical reports to show the same. Finally, on June 11 and July 5, 2004, ARP notified Ohio Casualty that the mediation was scheduled for July 21 and 22, 2004. Ohio Casualty clearly knew about and could have chosen to participate in the settlement negotiations.

Ohio Casualty does not deny any of this, but explains by saying that West's primary insurer, Amerisure, advised Ohio Casualty not to participate in order to avoid tipping the plaintiffs that West's insurers expected a multimillion dollar verdict. This only shows that Ohio Casualty did have notice and an opportunity to participate, but for strategic reasons declined to do so. Because Ohio Casualty had a right to defend and notice of the settlement negotiations, it waived the protection of the no-action clause in this declaratory coverage dispute.

Ohio Casualty makes several attempts to escape the reach of the Alabama rule on no-action clauses. First, it argues that, as the excess insurer, it had only a

right to defend and not a duty, and thus did not waive the protection of the no-action clause when it declined to participate in the settlement. But the waiver rule does not require a duty to defend. It applies so long as the insurer had a right and opportunity to defend. The Alabama Supreme Court made this clear in Wheelwright, where it repeatedly phrased the rule in terms of a right to defend. Wheelwright, 851 So. 2d at 478 ("[A]n insurer who has the right and opportunity to offer a defense and who declines to offer that defense may not relitigate the amount of a judgment its insured agreed to in good faith and within the limit of the insurer's coverage."); id. at 490; id. at 491. Moreover, it would make little sense to exempt from the waiver rule insurers with only a right to defend. That would allow such insurers to achieve the same prohibited result of denying coverage, causing the insured to enter into an unconsented settlement, and then setting up the no-action clause as a bar to the coverage dispute.

Second, Ohio Casualty draws a factual distinction between Wheelwright and the instant case. Ohio Casualty notes that in Wheelwright there was no indemnity relationship separating the plaintiff and the insurer: the plaintiff proceeded against the insurer after obtaining a settlement directly against the named insured. In this case, Twin City is seeking recovery against Ohio Casualty as the insurer of its

9

insured's indemnitor.[2] Ohio Casualty suggests that, notwithstanding <u>Wheelwright</u>,

ARP or its insurers should have secured a judgment against West before

proceeding against Ohio Casualty, and that in the absence of such a judgment, the

no-action clause applies.[3]

---

[2] This factual distinction between <u>Wheelwright</u> and the instant case does not exist with respect to Twin City's alternative argument that ARP was an additional insured directly covered by the Ohio Casualty policy. Twin City principally relies on the indemnity argument, however, because it likely will result in a greater recovery. If ARP qualifies only as an additional insured, its insurers included Twin City and Hartford Casualty in addition to Amerisure and Ohio Casualty, and Twin City and Hartford Casualty would likely share the liability with West's insurers. By contrast, if ARP is considered West's indemnitee, West owes ARP indemnity for the entire amount of the liability, and only Amerisure and Ohio Casualty are potentially liable. Regardless, we conclude that ARP's status as an indemnitee of West does not bar Twin City from proceeding against Ohio Casualty, in spite of the no-action clause. <u>See</u> <u>infra</u>.

[3] Ohio Casualty relies upon an unpublished panel decision that dealt with similar facts, <u>USF&G v. St. Paul Fire & Marine Ins. Co.</u>, No. 97-6218 (11th Cir. Feb. 25, 1998). We do not find <u>USF&G</u> to be persuasive. First and foremost, it is an unpublished opinion, and therefore does not constitute binding precedent. <u>United States v. Rodriguez-Lopez</u>, 363 F.3d 1134, 1138 n.4 (11th Cir. 2004). Although an unpublished opinion may be cited as persuasive authority, 11th Cir. R. 36-2, it is not binding authority. Moreover, an unpublished opinion would in any event be persuasive only to the extent that a subsequent panel finds the rationale expressed in that opinion to be persuasive after an independent consideration of the legal issue. With respect to <u>USF&G</u>, we do not find its rationale persuasive. It does not even mention the waiver rationale discussed above in this opinion and adopted by the Alabama Supreme Court in <u>Wheelwright</u>. It cites only two old cases decided by Alabama courts, neither of which involved facts remotely similar to the instant case. In one, the court held that a judgment obtained by a tort victim against an insured is "final" within the meaning of a no-action clause even though an appeal of that judgment is pending. <u>Ohio Cas. Ins. Co. v. Gantt</u>, 54 So.2d 595, 600 (Ala. 1951). In the other, the court refused to allow a tort victim to proceed against an insurer where the tort victim had obtained neither a settlement nor a judgment against the insured. <u>Hughes v. Hartford Acc. & Indem. Co.</u>, 134 So. 461, 463 (Ala. 1931). Neither case involved the waiver situation–an insurer with the right to defend and notice of settlement negotiations, but who refused to attend or participate, thus forcing the insured to enter into an unconsented settlement. <u>USF&G</u> also cited two Eleventh Circuit cases, neither of which involved a waiver situation. Thus none of the cases cited in <u>USF&G</u> addressed the waiver argument or the rationale and policies supporting our decision in this case and that in the <u>Wheelwright</u> case. In any event, in the instant case, the subsequent decision of the Alabama Supreme Court in <u>Wheelwright</u> established the relevant

10

However, Ohio Casualty does not explain why the indemnitor-indemnitee aspect of the instant case should make a difference and preclude application of the <u>Wheelwright</u> rationale. Nor can we imagine any such reason. Indeed, although <u>Wheelwright</u> did not involve an indemnitee suing an insurer, the <u>Wheelwright</u> court relied on an Alabama case which held that an indemnitor who has notice of a claim and refuses to defend is bound by a good faith, reasonable settlement entered into by its indemnitee. <u>Stone Bldg. Co. v. Star Elec. Contrs., Inc.</u>, 796 So. 2d 1076, 1090 (Ala. 2000). We are thus confident the Alabama Supreme Court would hold that an insurer waives the protection of the no-action clause with respect to an indemnitee of its insured when it refuses to participate in a settlement involving that indemnitee.

In its final attempt to prevent reaching the merits of the coverage dispute, Ohio Casualty argues that the structure of the settlement relieves it from liability. In the settlement, Twin City agreed not to execute judgment against or recover from West, and agreed to pursue recovery only against West's insurers. The Ohio Casualty policy only requires it to pay those sums that the insured "becomes legally obligated to pay." Ohio Casualty thus argues that because West never became obligated to pay the indemnity obligation, Ohio Casualty never had a legal duty

_____

legal principles as a matter of Alabama law.

11

that arose under the insurance policy and has no current obligation to reimburse ARP or its insurers.

The Alabama Supreme Court, however, rejected this argument in Wheelwright, finding that "legally obligated to pay" language does not block an otherwise valid coverage obligation when an insurer refuses to defend the insured and the injured party enters into a reasonable and good faith settlement that precludes proceeding against the insured. Wheelwright, 851 So. 2d at 490. Ohio Casualty argues that the holding was considerably narrower than this, noting that the Wheelwright court may have attributed some importance to the fact that the insured in that case was in bankruptcy. Id. at 489. But the Court's holding was not so narrow. First, the opinion ultimately based its holding on "the weight of authority," which consisted of numerous cases where the insured was not in bankruptcy. See id. at 490 (citing Coblentz v. Am. Surety Co., 416 F.2d 1059, 1063 (5th Cir. 1969); Auto-Owners Ins. Co. v. St. Paul Fire & Marine Ins. Co., 547 So. 2d 148, 151 (Fla. Dist. Ct. App. 1989); Red Giant Oil Co. v. Lawlor, 528 N.W.2d 524, 529 (Iowa 1995); Metcalf v. Hartford Acc. & Indem. Co., 126 N.W.2d 471, 475 (Neb. 1964)).

In addition, the Wheelwright court acknowledged that the plaintiff's response to the legally-obligated-to-pay argument was "essentially the same" as the

response to the no-action clause argument. Id. at 490. By holding for the plaintiff, then, the Wheelwright court implicitly recognized that an insurer who has a right to defend, receives notice of settlement negotiations, and refuses to participate waives the protection of the legally-obligated-to-pay condition, just as it waives the protection of the no-action clause: so long as the settlement is covered, reasonable, and made in good faith. The Wheelwright court's legally-obligated-to-pay holding was thus just as broad as its no-action clause holding.

Because of West's indemnity obligation, West in this case is in the same position as the insured in Wheelwright. For the same reason, in this case, the legally-obligated-to-pay condition must be deemed waived, and the settlement's effective release of the named insured West does not bar recovery against Ohio Casualty. Of course, the appellants still must prove that there was a valid indemnity obligation in order to recover. But a covenant not to pursue recovery against the indemnitor, West, does not prevent reaching that question on the merits.

Here, Ohio Casualty had a right to defend, was invited to participate in the settlement negotiations, and refused to attend. It therefore may not assert the no-action clause or the legally-obligated-to-pay condition in this coverage dispute with

13

the insurers of its insured's indemnitee.[4]

B. Coverage of indemnity obligations under the Ohio Casualty policy.

Because the no-action clause and the legally-obligated-to-pay condition do not bar coverage, we reach the merits of the coverage dispute. West agreed to indemnify ARP for ARP's tort liability arising out of West's work, which included tort liability to West employees. This indemnity obligation is clearly covered under the Ohio Casualty policy, which covers "insured contracts" where the named insured (West) assumes the tort liability of another party (here, ARP) to pay for bodily injury to a third person.[5]

C. The cross-suit exclusion.

Ohio Casualty argues, however, that the indemnity obligation in this case falls within the terms of an express exclusion in the policy: a cross-suit clause that

---

[4] In light of our holding that the no-action clause does not bar this suit, we need not address the argument that Ohio Casualty waived any reliance on the no-action clause by deficient pleading in the district court.

[5] Specifically, the Ohio Casualty policy provides insured contract coverage "to the extent that such insurance is provided by" an underlying policy. The Amerisure policy then provides insured contract coverage for a "contract or agreement pertaining to [West's] business. . . under which you [West] assume the tort liability of another party to pay for 'bodily injury' or 'property damage' to a third person or organization."

14

excludes "[a]ny liability of any 'Insured' covered under this policy to any other 'Insured' covered under this policy." It notes that ARP was an "additional insured" within the meaning of the policy, which covers any person "included as an additional 'Insured' by virtue of an 'insured contract,' and to which coverage is provided by the 'underlying insurance,' and for no broader coverage than is provided by the 'underlying insurance' to such additional 'Insured.' " ARP met all of these conditions. It was added as an additional insured by virtue of an insured contract (the indemnity agreement), and the underlying Amerisure policy provided coverage.[6] Ohio Casualty argues that because ARP was an additional insured, and West was an insured, the cross-suit clause excludes the indemnity liability owed from West to ARP.

We conclude, however, that the cross-suit exclusion is at best ambiguous with respect to obligations owed from an insured to an additional insured because the policy elsewhere expressly contemplates coverage of such obligations. In Alabama, a provision in an insurance contract is ambiguous "when more than one interpretation may fairly be given to a policy provision." Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co., 817 So.2d 687, 695 (Ala. 2001). In deciding whether a

---

[6] Specifically, the Amerisure policy covered persons "[w]hom you [West] are required to add as an additional insured on this policy under a written contract or agreement relating to your business. . . with respect to liability arising out of. . . 'Your work' for that additional insured."

15

provision is ambiguous, the terms "should be given a rational and practical construction." State Farm Fire & Cas. Co. v. Slade, 747 So.2d 293, 309 (Ala. 1999). "[A] court cannot consider the language in the policy in isolation, but must consider the policy as a whole." Id. The cross-suit exclusion is ambiguous in this instance because it does not specify whether an "insured" includes an "additional insured," for whom coverage is specifically provided elsewhere in the policy.

Here, considering the policy as a whole, it would make little sense to apply the cross-suit exclusion to indemnity obligations owed by a named insured to an additional insured. First, such a reading would nullify the core of the additional insured coverage provision. That provision applies only so long as, inter alia, the person is included as an additional insured "by virtue of" a particular kind of indemnity contract. The party ordinarily named as an additional insured by virtue of an indemnity contract is the indemnitee. But under Ohio Casualty's reading of the cross-suit exclusion, an indemnitee named as an additional insured would not be covered, because the indemnity obligation would thereby be owed from one insured to another and fall under the cross-suit exclusion. This would not only remove the core of the additional insured provision. It would also conflict with its terms, which apply broadly to "[a]ny person or organization. . . included as an additional 'Insured' by virtue of an 'insured contract.' "

16

Ohio Casualty's reading of the cross-suit exclusion would preserve coverage under the additional insured provision in a single narrow situation: where the additional insured named "by virtue of" the insured contract is not also an indemnitee under the insured contract. There is nothing in the policy to indicate that the parties intended the additional insured coverage to be so limited. And the language in the additional insured provision, which extends to "[a]ny person or organization," conflicts with a purported intention to limit the coverage to persons who are not indemnitees. By contrast, an interpretation of the cross-suit exclusion that does not exclude liability owed from an insured to an additional insured preserves the full force of both the additional insured provision and the cross-suit exclusion (which continues to apply to suits between other sorts of "insured" parties). See Celtic Life Ins. Co. v. McLendon, 814 So.2d 222, 224 (Ala. 2001) ("[I]nsurance contracts, like other contracts, are construed so as to give effect to the intention of the parties. . . [T]o determine this intent, a court must examine more than an isolated sentence or term; it must read each phrase in the context of all other provisions.").

Ohio Casualty's reading also conflicts with the insured contract provision, which covers certain kinds of indemnity contracts. According to Ohio Casualty's interpretation, a named insured who adds an indemnitee as an additional insured in

17

such a contract also loses insured contract coverage. Nothing in the policy

contemplates such a result. To the contrary, the insured contract provision is

worded just as broadly as the additional insured provision. It applies to any

"contract or agreement pertaining to [West's] business," and does not say that a

contract that also happens to include the indemnitee as an additional insured is not

covered.[7]

Finally, in Alabama "exceptions to coverage are to be interpreted as

narrowly as possible in order to provide maximum coverage for the insured, and. . .

clauses setting out exceptions must be construed most strongly against the

company that issued the policy." Wakefield v. State Farm Mut. Auto. Ins. Co., 572

So.2d 1220, 1223 (Ala. 1990). See also Am. States Ins. Co. v. Martin, 662 So.2d

245, 247 (Ala. 1995). Because the cross-suit exclusion is ambiguous with respect

to whether it excludes liability owed from a named insured to an additional insured,

the ambiguity must be resolved against Ohio Casualty, and in favor of coverage.

Accordingly, we reject Ohio Casualty's argument based on the cross-suit

---

[7] We also note that Ohio Casualty's interpretation of the cross-suit exclusion would likely result in illusory coverage. In Alabama, insurance contracts must be interpreted to avoid illusory coverage, which occurs when a limitation or exclusion completely contradicts a coverage provision. Shrader v. Emplrs. Mut. Cas. Co., 907 So.2d 1026, 1032-33 (Ala. 2005). As noted above, Ohio Casualty's interpretation would result in a very limited application for the additional insured coverage. Ohio Casualty's interpretation would therefore likely eliminate all meaningful additional insured coverage, and would thus result in impermissible illusory coverage as well.

exclusion.[8]

### D. Liability under the indemnity agreement.

Because the cross-suit exclusion does not apply, Ohio Casualty owes coverage to the extent of West's indemnity obligation. Ohio Casualty argues that the indemnity obligation was not triggered because the accident did not "arise out of" West's work. Ohio Casualty notes that the West workers were injured only because their work for West happened to put them in the path of an accident that was caused solely by ARP's negligence or wantonness. Ohio Casualty contends that this kind of but-for causation was insufficient to trigger the indemnity obligation: instead, there needed to be a kind of proximate causation for the accident to fall under the agreement.

This argument is without merit. Courts have consistently held that but-for causation is enough to constitute "arising out of." In the course of interpreting

---

[8] We note that our interpretation is supported not only by Alabama law, but also by an express caveat to the cross-suit exclusion in the policy itself. Immediately following the exclusion is this caveat: "This endorsement does not change any other provision of the policy." Ohio Casualty's interpretation of the cross-suit exclusion would significantly alter both the additional insured and insured contract provisions, and thus must be rejected for this reason as well.

In light of our holding that the cross-suit exclusion does not preclude coverage, we decline to address the argument that Ohio Casualty waived any reliance on the exclusion by having raised it in the district court in an untimely manner.

Alabama law, the court in <u>Davis Constructors & Eng'rs, Inc. v. Hartford Acc. & Indem. Co.</u>, 308 F. Supp. 792 (M.D. Ala. 1968) construed similar language to include an accident where the indemnitee's negligence was the sole cause. <u>Id.</u> at 795. Courts generally interpret "arising out of" in this broad sense. <u>See</u> <u>Mid-Continent Cas. Co. v. Swift Energy Co.</u>, 206 F.3d 487, 498 (5th Cir. 2000) (collecting cases). There is no indication that Alabama would adopt a different interpretation. To the contrary, Alabama law instructs that ambiguities in insurance contracts are to be interpreted in favor of the insured. <u>See</u> <u>Jordan v. Nat'l Acc. Ins. Underwriters, Inc.</u>, 922 F.2d 732, 734 (11th Cir. 1991).

Finally, the indemnity clause at issue here includes much more than liability that arises out of West's work. It includes claims "in any way related to the performance" of West's work, "in whatever manner the same may be caused." It also explicitly includes accidents whose "sole" cause was ARP's negligence. That appears to contemplate the exact situation in this case, where ARP's negligence was the proximate cause of the accident. The indemnity agreement thus clearly covered the accident underlying this declaratory judgment action.

### III.  CONCLUSION

We have held that the no-action clause, the legally-obligated-to-pay

20

condition, and the cross-suit exclusion do not preclude Ohio Casualty's insurance obligation in this case. We have also held that Ohio Casualty's policy covers to the extent of West's obligation pursuant to its contract indemnifying ARP. With respect to West's indemnity obligation, we have rejected Ohio Casualty's argument that the indemnity agreement was not triggered because the accident did not arise out of West's work. We decline to address Ohio Casualty's remaining challenge to West's indemnity obligation–i.e. Ohio Casualty's argument that West did not assume any obligation to indemnify ARP for wanton conduct and that part of the settlement encompassed damages for wanton conduct. We prefer for issues related to this Ohio Casualty argument to be addressed by the district court in the first instance on remand.

These and other issues remain for the district court to decide on remand. The other issues include whether the indemnity agreement covered liability resulting from ARP's alleged wantonness and, if it did not, whether Ohio Casualty has waived the argument that part of the settlement is attributable to wantonness by failing to participate in the settlement. If the district court determines that Twin City cannot recover for wantonness under the indemnity agreement, and if Ohio Casualty has not waived the argument that the settlement included wantonness, then the court will have to decide who has the burden of proof on the proration of

21

the settlement amount between negligence and wantonness, as well as the appropriate proration in this case. In addition, Ohio Casualty retains the right to challenge the reasonableness of the settlement.

Finally, if the district court determines that Twin City's recovery under the indemnity agreement should be wholly or partially reduced due to amounts attributable to ARP's alleged wantonness, it will have to consider ARP's status as an additional insured. The issues under that head might include, first, whether the insurance policy directly covers settlement costs attributable to ARP's wantonness; second, if the policy does not cover such costs, whether Ohio Casualty waived the argument by failing to participate in the settlement; third, if some costs are covered, whether there should be a pro rata distribution of those costs among the several insurers; and fourth, if proration is warranted, what the appropriate proration should be.[9]

For the foregoing reasons, we reverse the district court's grant of summary judgment and remand the case for further proceedings consistent with this opinion.

**REVERSED and REMANDED.**

---

[9] Our mention of issues on remand is not intended to be all-inclusive. Nor do we express any opinion with respect thereto.